CITY OF NEW BRITAIN *v.* CONNECTICUT STATE BOARD
OF MEDIATION AND ARBITRATION ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and A. HEALEY, Js.

Argued June 6—decision released July 31, 1979

*Edward T. Lynch, Jr.,* with whom was *Dennis G. Ciccarillo,* for the appellant (plaintiff).

*Joel M. Ellis,* with whom, on the brief, was *William S. Zeman,* for the appellee (defendant Local 1186, AFSCME, Council 4, AFL-CIO).

BOGDANSKI, J. In this action, the city of New Britain is appealing from a judgment of the Superior Court denying its application to vacate an arbitration award rendered by the defendant board of arbitration.

The record discloses the following facts: In November of 1975, the defendant Vincent Fusari was hired by the city under the Comprehensive Employment and Training Act of 1973 (hereinafter CETA) and assigned to a position as a planning technician in the city's planning department. In April, 1976, the manpower coordinator of the city sent a letter to all CETA employees informing them that "in the ensuing months, much more intensive emphasis will be placed on transition to permanent jobs [and as a result] you will be referred to permanent job openings for which you are qualified and will be requested to go for many interviews [for which] you will be paid . . . providing the proper procedures have been followed." The letter went on to caution the employees "to not refuse an interview and/or comparable job if it is offered to you [as] such refusal will indicate a violation of the intent of the CETA program (i.e. temporary transitional employment) and will weigh very heavily in any decision for lay-off or termination from the program."

In July, 1976, Fusari was terminated from the CETA program by the city for failure to attend a job interview arranged for him by the manpower coordinator. The letter of termination also

informed Fusari that "in accordance with the provisions of the Bargaining Agreement between the City of New Britain and Local # 1186, AFSCME—AFL-CIO you have fifteen (15) days in which to appeal in writing through the grievance procedure." A grievance was timely filed on behalf of Fusari by the union and was processed through the various steps of the contractually provided grievance procedure. When no agreement was reached, the grievance was submitted to the defendant Board of Arbitration, the agency named in the agreement as arbitrator. The submission to the arbitrators by the parties was as follows: "Under Article 8.1 of the Collective Bargaining Agreement, was grievant Vincent Fusari discharged for just cause? If not, what shall the remedy be?"

In January, 1977, the arbitrators held a hearing at which the city appeared and participated through its attorney. The award subsequently rendered by the arbitrators ordered that the discharge of the grievant be converted into a thirty-day suspension and that after the suspension period, the grievant be reinstated and awarded back pay, reduced by any unemployment benefits or other compensation which he may have received in the interim.

The city thereupon filed an application, pursuant to General Statutes §§ 52-418–19 to have the award vacated, while the union moved to have the award confirmed. From the judgment of the trial court confirming the award, the plaintiff has appealed to this court.

On appeal, the plaintiff contends that Fusari, as a CETA participant, was only a temporary employee and was not entitled to use the grievance procedure established by the collective bargaining

agreement between the city and the union, and that the arbitrators exceeded their powers in sustaining the grievance filed on Fusari's behalf by the union.

We note that a respondent in arbitration who desires to question the arbitrability of a particular dispute may refuse to submit to arbitration and may instead compel judicial determination of the issue of arbitrability. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409; *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 274, 231 A.2d 531. In such cases, a court will interpret the terms of the parties' agreement to determine whether the dispute in question is one which the agreement of the parties requires them to submit to arbitration. *United Steelworkers of America* v. *American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S. Ct. 1343, 4 L. Ed. 2d 1403. Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. *United Steelworkers of America, AFL-CIO* v. *United States Gypsum Co.,* 492 F.2d 713 (5th Cir.); Gorman, Labor Law (1976 Ed.) c. 25 § 2. In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration. *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 63, 357 A.2d 466; *Costello Construction Corporation* v. *Teamsters Local 559,* 167 Conn. 315, 318, 355 A.2d 279.

In *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* supra, 62, this court observed that

its respect for the autonomy of the arbitration process "dictates that we recognize the waiver principle" and cautioned that "[t]he effect of this recognition is to place a burden upon the parties, in the situation where the question of arbitrability is not [expressly] reserved to the arbitrator, to frame the submission carefully . . . and, if necessary to protect their objections, to seek judicial reconciliation of [such] threshold questions prior to submitting to arbitration." See also note, "Participation in arbitration proceedings as waiver of objections to arbitrability," 33 A.L.R.3d 1242.

The record in the instant case discloses that the city expressly advised Fusari in its letter of termination that he could appeal its decision through the grievance procedure established by the collective bargaining agreement between the city and the union and that the city participated, without objection, in the processing of Fusari's grievance through the various steps of the contractually provided procedure. The record further reveals that the city joined with the union in submitting the dispute over the discharge of Fusari to arbitration and that the joint submission of the parties neither presented nor reserved any question as to the arbitrability of that dispute. Not until *after* the underlying dispute had been finally resolved on the merits did the plaintiff raise any question as to the arbitrability of the underlying dispute.

On the basis of the above, the trial court concluded that the city's claims as to the arbitrability of the underlying dispute must be deemed to have been waived. We agree and conclude that the court properly refused to consider these claims upon the motion to vacate.

The plaintiff next argues that the award should have been vacated on the ground that the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted to them was not made. General Statutes § 52-419 (b). The plaintiff contends that the award of the arbitrators was internally inconsistent; that the findings of fact of the arbitrators disclose that they expressly found that the city had retained the right to discharge an employee "for cause" on the basis of a failure to seek other employment and that having so found, the arbitrators did not have the power to substitute what they thought to be a more appropriate discipline, i.e., suspension instead of discharge.

In resolving a claim that the arbitrators exceeded or imperfectly exercised their powers, a court need only examine the submission and the award to determine whether the award conforms to the submission. *City of Waterbury* v. *Waterbury Police Union, Local 1237,* 176 Conn. 401, 407 A.2d 1013; *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 291, 377 A.2d 323; *Norwich Roman Catholic Diocesan Corporation* v. *Southern New England Contracting Co.,* 164 Conn. 472, 477, 325 A.2d 274. While the court, in such situations, may examine the memorandum of the arbitrators to determine if the arbitrators were faithful to their obligations, the result reached by the award will control unless the memorandum patently discloses an infidelity to the obligation imposed upon the arbitrators. *Darien Education Assn.* v. *Board of Education,* 172 Conn. 434, 438, 374 A.2d 1081; *United Steelworkers of America* v. *Enterprise Wheel & Car Corporation,* 363 U.S. 593, 598, 80 S. Ct. 1358, 4 L. Ed. 2d 1424.

Examination of the memorandum in the instant case reveals that the arbitrators found that the failure of the defendant to attend the July 9 job interview was an isolated instance of dereliction and concluded that this failure, while warranting some disciplinary action, was not sufficient to warrant the ultimate penalty of discharge. The trial court concluded from the above that the arbitrators had at least impliedly found that the city lacked "just cause" to discharge Fusari and concluded therefrom that the award was not internally inconsistent and must therefore govern.

We observe that the city, by agreeing to an unlimited submission, authorized the arbitrators to exercise their own judgment in determining whether the conduct of the defendant Fusari constituted "just cause" for dismissal under the terms of the collective bargaining agreement. *Board of Education* v. *Bridgeport Education Assn.*, 173 Conn. 287, 293–94, 377 A.2d 323. Having agreed to submit that issue to the arbitrators, the city cannot complain when the arbitrators determine that the conduct of the defendant did not rise to the level of "willful misconduct" necessary to provide cause for dismissal under the contract.[1] *City of Waterbury* v. *Waterbury Police Union*, supra, 401; *Hartford* v. *Local 308*, 171 Conn. 420, 432–33, 370 A.2d 996; *Niles-Bement-Pond Co.* v. *Amalgamated Local 405*, 140 Conn. 32, 37–38, 97 A.2d 898.

---

[1] The record discloses that the city at the arbitration hearing acknowledged that "just cause" to discharge was not established simply by a showing that an employee had failed to attend a scheduled job interview and that a failure to attend an interview would constitute grounds for dismissal only if such failure constituted "willful misconduct" on the part of the employee.

We conclude that the trial court did not err in denying the plaintiff's application to vacate the award.

There is no error.

In this opinion the other judges concurred.