PROVIDENCE TEACHERS' UNION LOCAL 958—AMERICAN FEDERATION OF TEACHERS

v.

PROVIDENCE SCHOOL COMMITTEE.

No. 79–62–Appeal.

Supreme Court of Rhode Island.

Aug. 4, 1981.

Richard A. Skolnik, Providence, for plaintiff.

Vincent J. Piccirilli, Providence, for defendant.

## OPINION

KELLEHER, Justice.

The Providence School Committee (the committee) appeals from a Superior Court judgment affirming an arbitration award made pursuant to the terms of a collective-bargaining agreement (the agreement) entered into between the committee and the Providence Teachers' Union, Local 958 (the union). The controversy began when the union in early February 1976 filed a grievance claiming that since certain named individuals who were employed in the Providence school system were performing work encompassed by the terms of the agreement, they were entitled to the benefits called for in the agreement. The grievance proceeded through the various stages of arbitration, with the committee consistently maintaining that the grievants could not invoke the agreement's arbitration provisions because they were not members of the bargaining unit. In due course, a majority of the binding-arbitration panel ruled that the grievants were entitled to the benefits. Subsequently, a Superior Court justice granted the union's motion to confirm the arbitration award. The committee is now before us once again challenging the arbitrability of the grievance and, in addition, claiming that the award should be vacated because it was not "final and definite."

This litigation arises because of the committee's hiring practices as they relate to the area of adult education. The Providence school system during the time in

question was offering a basic high school education to those adults so interested, with emphasis placed on the teaching of English as a second language. The program was an unstructured affair allowing the participants the freedom of attending morning, afternoon, or evening classes. The nature of the program created budgetary problems because classes were held frequently and at many times had a maximum attendance of five students. The committee could not afford to hire regular teachers for this program. Consequently, in order to solve the budgetary problem, the committee hired paraprofessionals [1] and teaching aides.

The grievant in the case before us is Thomas H. Mitchell (Mitchell). He was hired on February 17, 1974, as a paraprofessional in the project ERA–COPE. On September 19, 1975, he was employed as a paraprofessional in the adult-education program. Paraprofessionals were members of the laborers' union. At the time of his hiring, he did not have a teaching certificate, which is issued by the State Department of Education. However, the record indicates that in June of 1974 he was graduated from Rhode Island College, receiving his Bachelor of Arts degree. Thereafter, he was provisionally certified by the Department of Education as a secondary-school teacher. Mitchell contended that because he was performing such tasks as teaching classes on his own, administering tests, and completing daily lesson plans with a minimum of supervision, he was functioning as a "regular teacher." Accordingly, he and others similarly situated sought to be classified as "teachers" as that term is used in the collective-bargaining agreement.

In the collective-bargaining agreement, the committee recognized the union as the exclusive bargaining representative for "all certified teaching personnel employed by the Providence School Committee, long-term substitute teachers, home visitors, social workers, and nurses * * *." The agreement also provided that the union would be the representative for those persons who either at the time of the execution of the agreement or "hereafter * * * perform the duties or functions of the categories of teachers in the bargaining unit." The committee has consistently maintained that Mitchell's grievance does not come within the collective-bargaining provisions because he was hired as a paraprofessional and not as a certified teacher.

The committee raised the issue of arbitrability but then proceeded to participate in the arbitration proceedings. Although this court in *Coventry Teachers' Alliance v. Coventry School Committee*, R.I., 417 A.2d 886, 889 (1980), has ruled that a party who has participated in an arbitration proceeding cannot later seek to vacate an award on the ground that the controversy was not arbitrable, it never intended that this principle would bar judicial review when a party has preserved its objection at the arbitration hearing. A party who wishes to challenge the arbitrability of a particular dispute has two options. It may refuse to submit to arbitration and compel a judicial determination of whether or not the dispute is arbitrable. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960); *City of New Britain v. Connecticut State Board of Mediation and Arbitration*, 178 Conn. 557, 558, 424 A.2d 263, 264 (1979); *School Committee of City of Pawtucket v. Pawtucket Teachers Alliance*, R.I., 390 A.2d 386, 389 n.3 (1978). On the other hand, the issue of arbitrability may be submitted to the arbitration panel, and a party choosing this route must first state its objection to the arbitrability of the grievance at the arbitration hearing. *City of New Britain v. Connecticut State Board of Mediation and Arbitration*, 178 Conn. 557, 265, 424 A.2d 263, 265 (1979); 33 A.L.R.3d 1242 (1970).

This court has held that an arbitrator's decision on the merits of a grievance is subject to a limited scope of review.

---

1. A paraprofessional provides general assistance to a teacher in instructing and tutoring students, in preparing work before class, in maintaining attendance reports, and in performing such other tasks as are required.

*Jacinto v. Egan*, R.I., 391 A.2d 1173, 1176 (1978). We shall not vacate an arbitration award absent a manifest disregard of the provisions of a collective-bargaining agreement or a completely arbitrary result. *Coventry Teachers' Alliance v. Coventry School Committee*, R.I., 417 A.2d 886 (1980); *Burns v. Segerson*, R.I., 404 A.2d 500, 504 (1979). However, the issue of whether a dispute is arbitrable concerns a question of law and is subject to a broader standard of review than is an arbitrator's decision on the merits. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783 (3d Cir. 1978). Courts should not equate the issue of arbitrability with the deference due the arbitrator's interpretation of the contract. *Mobil Oil Corp. v. Local 8-766 Oil, Chemical & Atomic Workers International Union*, 600 F.2d 322, 325 (1st Cir. 1979); *School Committee of Pawtucket v. Pawtucket Teachers Alliance*, R.I., 390 A.2d 386, 389 (1978). Rather, a reviewing court must decide the question of arbitrability de novo. *Mobil Oil Corp. v. Local 8-766 Oil, Chemical & Atomic Workers International Union*, 600 F.2d 322 (1st Cir. 1979); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783 (3d Cir. 1978); *Joint School District No. 10 City of Jefferson v. Jefferson Education Association*, 78 Wis.2d 94, 253 N.W.2d 536 (1977).

■ In determining the arbitrability of a grievance, the United States Supreme Court has held that a court shall rule in favor of submitting the dispute to arbitration unless the arbitration clause of the collective-bargaining agreement cannot be interpreted to include the asserted dispute and that all doubts should be resolved in favor of arbitration. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v.*

*American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). We approved the holdings of the cases, popularly known as the Steelworkers' Trilogy, in *School Committee of Pawtucket v. Pawtucket Teachers Alliance*, R.I., 390 A.2d 386, 389 (1978).

The parties in this case have chosen to arbitrate alleged "violation[s], inequitable application[s], misrepresentation[s], or misinterpretation[s]" of the agreement. Here, the issue was whether or not Mitchell in June of 1974 was functioning as a "certified teacher." In analytical terms, the grievance questioned the scope of substantive provisions of the agreement, specifically, the extent of the union's jurisdiction. When the Steelworkers' Trilogy standard is applied to this case, it seems quite clear that, if one keeps in mind the contract language to which we have alluded, Mitchell's grievance was arbitrable.

■ Turning now to the committee's claim that the arbitrators' award lacks the finality and definiteness that would make it enforceable, we are reminded that in *Cranston Teachers Association v. School Committee of Cranston*, R.I., 416 A.2d 1180, 1183 (1980), we noted that the contempt process is an appropriate vehicle by which a party may seek compliance with a judgment confirming an arbitration award, but we also stressed that an award, to be enforceable, must inform those against whom it is directed what is expected of them in clear, certain, and specific terms. The committee contends that the award is indefinite because it does not specifically mention those grievants entitled to relief, noting that the language of the award says "others similarly situated." We disagree.

Although the award does not list all the grievants entitled to relief, the arbitrators have listed in their opinion the names of three other individuals who should benefit from the ruling made on Mitchell's grievance. Thus, we cannot say that the award is indefinite with respect to those people to whom it applies.

■ We cannot agree with the committee's contention that the award is faulty because it fails to state specifically the relief to which successful grievants are entitled. However, the award does state that the successful grievants are entitled to those benefits that are provided for those designated "teachers" under the agreement. Hence, the award sets forth a formula, and the parties need only resort to the agreement to compute the amount due each grievant. An award will not fail by reason of the arbitrators' retaining jurisdiction to perform the ministerial task of computing the amount of the award. *See Maine Central Railroad Co. v. Bangor & Aroostook Railroad Co.*, 395 A.2d 1107, 1121 (Me.1978). It is our belief that the arbitrators' award has the requisite certainty and is capable of being enforced.

The committee's appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.

SHEA, J., did not participate.