INDUSTRIAL RISK INSURERS *v.* HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY

HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY *v.* INDUSTRIAL RISK INSURERS
(SC 16155)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued March 13—officially released September 18, 2001

*Lawrence Zelle*, pro hac vice, with whom were *Linda L. Morkan, Richard L. Voelbel*, pro hac vice, and, on the brief, *Michelle K. Enright*, pro hac vice, and *Louis I. Parley*, for the appellant (Industrial Risk Insurers).

*Thomas E. Birsic*, with whom was *Maurice T. Fitz-Maurice*, for the appellee (Hartford Steam Boiler Inspection and Insurance Company).

*Opinion*

VERTEFEUILLE, J. In this appeal, Industrial Risk Insurers (Industrial Risk), appeals from the judgment of the trial court denying its application to vacate an arbitration award and granting the application to confirm the award filed by Hartford Steam Boiler Inspection and Insurance Company (Hartford Steam Boiler).[1] On appeal, Industrial Risk claims that the trial court improperly confirmed the arbitrator's award because: (1) the submission to the arbitrator was restricted; and (2) the arbitration panel exceeded the scope of its authority. We conclude that the trial court properly confirmed the award and accordingly we affirm the judgment of the trial court.

The following facts and procedural history, as set forth by the trial court in its memorandum of decision, are relevant to this appeal. "The present action arises out of a catastrophic loss which occurred at the Monsanto Corporation's [Monsanto] Chocolate Bayou plant in Alvin, Texas, on January 13, 1992 (Monsanto loss). The parties to this dispute, [Industrial Risk] and [Hartford Steam Boiler], are parties to a reinsurance [contract]. A dispute arose between the parties concerning whether the Monsanto loss was covered by the reinsurance [contract]. The dispute eventually led to a complex series of arbitrations. . . . At the time of the Monsanto

---

[1] Industrial Risk appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

loss, [Hartford Steam Boiler] provided [Industrial Risk] with reinsurance for boiler and machinery coverage pursuant to a reinsurance [contract] between the parties that dated back to 1975. While [Industrial Risk] insured Monsanto for all risks, including, but not limited to, boiler and machinery losses, [Hartford Steam Boiler] reinsured [Industrial Risk] only for specific types of boiler and machinery losses. Only a portion of the coverage [Industrial Risk] afforded to Monsanto, therefore, was reinsured by [Hartford Steam Boiler]. [Industrial Risk] and [Hartford Steam Boiler] disagreed as to the nature of the Monsanto loss. [Industrial Risk] believed that the Monsanto loss was a boiler and machinery loss, which was reinsured. [Hartford Steam Boiler], meanwhile, took the position that it was not a reinsured boiler and machinery loss. Rather, [Hartford Steam Boiler] asserted that the loss was covered by [Industrial Risk], pursuant to the nonreinsured portion of [Industrial Risk's] insurance policy with Monsanto, and by Monsanto's other all risk insurers.[2]

"[Industrial Risk] entered into an agreement with Monsanto's all risk insurers later in 1992. Under this agreement, [Industrial Risk] and the all risk insurers would participate in an arbitration to determine whether the loss was covered by the all risk policies or by the boiler and machinery portion of [Industrial Risk's] policy. Although [Industrial Risk] was itself an all risk insurer in addition to its status as a boiler and machinery insurer, it agreed exclusively to advocate the boiler and machinery position for the purposes of the arbitration. [Hartford Steam Boiler] contested this arrangement, and filed two civil actions in the Hartford Superior Court seeking, inter alia, to enjoin [Industrial Risk's] all risk arbitration from proceeding.

---

[2] As noted by the trial court in its memorandum of decision, in addition to the all risk policy Monsanto had with Industrial Risk, Monsanto also had all risk insurance policies with three other insurers that specifically excluded boiler and machinery losses from the scope of coverage afforded thereunder.

"After [Hartford Steam Boiler] had filed the two civil suits, [Industrial Risk] and [Hartford Steam Boiler] entered into a written settlement agreement in February, 1993. Pursuant thereto, [Hartford Steam Boiler] would drop its civil actions, and the parties would allow the pending arbitration between [Industrial Risk] and the all risk insurers—referred to in the agreement as the phase I arbitration—to continue to a final adjudication. After phase I, [Industrial Risk] and [Hartford Steam Boiler] would move on to the phase II arbitration. The phase II arbitration panel's role was to determine 'the identification of the terms and conditions of the reinsurance contract between [Industrial Risk] and [Hartford Steam Boiler].' . . . Following the phase II arbitration, the parties would move on to phase III where 'the sole issue to be adjudicated . . . [was] whether any loss which [Industrial Risk] is required to pay as a result of the decision in the Phase I Arbitration is reinsured under the contract of reinsurance as identified by the Phase II Arbitration.' . . . The settlement agreement defined the phase III arbitration as 'a separate arbitration between [Hartford Steam Boiler] and [Industrial Risk] pursuant to ARTICLE 9 of the reinsurance agreement between Factory Insurance Association, [Industrial Risk's] predecessor in interest, and [Hartford Steam Boiler] . . . .[3]

---

[3] Article nine of the reinsurance agreement provides: "A. If there is a lack of agreement with respect to the facts or the interpretation of applicable coverage, [Industrial Risk] shall proceed to adjust the loss with [Monsanto]. If [Hartford Steam Boiler] shall take exception to such loss adjustment, it shall be adjudicated by a Boiler and Machinery Sub-Committee of [Industrial Risk's] Standing Loss Committee.

"B. [Industrial Risk's] Boiler and Machinery Loss Sub-Committee shall be appointed by [Industrial Risk's] Standing Loss Committee and shall consist of five members, two of whom shall be representatives of [Industrial Risk] Members which do not maintain inspection service for boiler and machinery insurance; and two of whom shall be representatives of [Industrial Risk] Members which maintain inspection service for boiler and machinery insurance; the fifth member shall be a representative of the reinsurer [Hartford Steam Boiler] involved in the loss."

"The phase I arbitration proceeded without [Hartford Steam Boiler's] participation. . . . [T]he phase I panel determined that the Monsanto loss was within the terms of [Industrial Risk's] boiler and machinery coverage. . . . Pursuant to the panel's determination, [Industrial Risk] was liable to Monsanto for $103 million.

"[Hartford Steam Boiler] and [Industrial Risk] then commenced phase II, and . . . the phase II panel rendered its final decision identifying the terms and conditions of the reinsurance [contract] between [Hartford Steam Boiler] and [Industrial Risk]. Essentially, the phase II final award provided that the reinsurance [contract] was on a 'following form' basis, meaning that the terms and conditions of [Industrial Risk's] policy with Monsanto took precedence and controlled over any conflicting terms of the reinsurance [contract].

"Before the phase III arbitration commenced, a dispute arose as to the scope of the arbitrable issues to be determined in the phase III hearing. Specifically, [Hartford Steam Boiler] claimed that it was not bound by the phase I award and was entitled to a de novo hearing concerning the nature of the Monsanto loss in the phase III arbitration. When the phase III panel decided that it would conduct an evidentiary hearing to determine whether [Hartford Steam Boiler] was entitled to a de novo hearing, it became apparent that the parties disagreed as to the scope of the phase III panel's authority to decide the de novo issue. [Hartford Steam Boiler] contended that the court, not the phase III panel, should decide the de novo issue, while [Industrial Risk] argued that the panel could conduct the evidentiary hearing.

"Because of this dispute, [Hartford Steam Boiler] filed a motion to stay arbitration. . . . [T]he court ruled that the phase III panel, rather than the court, had the authority to decide whether to afford [Hartford

Steam Boiler] a de novo hearing concerning the nature of the Monsanto loss and whether it would be bound by the phase I final award. . . . Pursuant to that ruling, the phase III panel conducted a preliminary hearing to determine whether [Hartford Steam Boiler] would be entitled to a de novo hearing in the phase III arbitration. After the hearing, the phase III panel agreed with [Hartford Steam Boiler] and issued an interim award to that effect: 'Having considered the submissions of the parties, including prehearing memoranda, exhibits, testimony of witness[es] and arguments of counsel at the preliminary hearing . . . and after due deliberation, the majority of the Panel has concluded that [Hartford Steam Boiler] is not estopped by the Phase I Final Award from taking exception to the loss adjustment made by [Industrial Risk], and that [Hartford Steam Boiler] is entitled under Article 9 of the Reinsurance Agreement to a de novo hearing on that issue as part of the Phase III hearing before this Panel.' . . . By letter . . . the phase III panel clarified its interim award by stating: 'The Phase III hearing will involve a de novo determination by the Panel of the underlying facts of the loss and coverage under the policies, with consideration but not binding effect to be given to the Phase I award.' . . .

"The phase III arbitration hearing was conducted in October, 1998. The panel heard testimony from eleven witnesses and received over 400 exhibits. . . . [T]he phase III panel rendered its unanimous award: 'The loss that [Industrial Risk] was required to pay to Monsanto Company is reinsured to the extent of [$22 million] under the reinsurance [contract] between [Industrial Risk] and [Hartford Steam Boiler].' " (Citations omitted.)

Hartford Steam Boiler then filed an application in the trial court to confirm the phase III arbitration award

pursuant to General Statutes § 52-417.[4] Subsequently, Industrial Risk filed an application in the trial court to modify and confirm as modified or to vacate the arbitration award pursuant to General Statutes §§ 52-418[5] and 52-419.[6] The trial court granted Hartford Steam

[4] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[5] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators. Notwithstanding the time within which the award is required to be rendered, if an award issued pursuant to a grievance taken under a collective bargaining agreement is vacated the court or judge shall direct a rehearing unless either party affirmatively pleads and the court or judge determines that there is no issue in dispute.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the Attorney General, in writing, of such filing within five days of the date of filing."

[6] General Statutes § 52-419 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident

Boiler's application to confirm the award and denied Industrial Risk's application to modify and confirm as modified or to vacate the award. This appeal followed.

## I

Industrial Risk first claims that the trial court improperly confirmed the arbitration award because it improperly determined that the submission to the arbitration panel was unrestricted. We conclude that the award in this case arose out of an unrestricted submission.

Our analysis is guided by the well established principles of law governing consensual arbitration. "Arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators. *Waterbury* v. *Waterbury Police Union*, 176 Conn. 401, 403, 407 A.2d 1013 (1979)." (Internal quotation marks omitted.) *United States Fidelity & Guaranty Co.* v. *Hutchinson*, 244 Conn. 513, 519, 710 A.2d 1343 (1998). "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted. *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983); *Bic Pen Corporation* v. *Local No. 134*, 183 Conn. 579, 584–85, 440 A.2d 774 (1981); *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 106–107, 438 A.2d 1171 (1981)." *Garrity* v. *McCaskey*, 223 Conn. 1, 5, 612 A.2d 742 (1992).

material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy.

"(b) The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

"Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 304, 680 A.2d 1274 (1996). Under an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 186, 530 A.2d 171 (1987); *Carroll* v. *Aetna Casualty & Surety Co.*, [189 Conn. 16, 19, 453 A.2d 1158 (1983)]. The resulting award can be reviewed, however, to determine if the award conforms to the submission. *Garrity* v. *McCaskey*, supra, 223 Conn. 4. Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. . . . *American Universal Ins. Co.* v. *DelGreco*, supra, 186–87. The significance, therefore, of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision." (Internal quotation marks omitted.) *United States Fidelity & Guaranty Co.* v. *Hutchinson*, supra, 244 Conn. 519–20.

In the present case, the settlement agreement between Industrial Risk and Hartford Steam Boiler con-

stituted the submission to arbitration. See *Bennett* v. *Meader*, 208 Conn. 352, 363, 545 A.2d 553 (1988). The parties agreed that "[t]he sole purpose of this [Phase III] Arbitration will be to determine whether any loss which [Industrial Risk] is required to pay as a result of the decision in the Phase I Arbitration is reinsured under the contract of reinsurance as identified by the Phase II Arbitration."[7]

Industrial Risk claims that the inclusion of the language "under the contract of reinsurance as identified by the Phase II Arbitration" evidences the parties' intent to create a restricted submission. We disagree. In an analogous line of cases regarding arbitration awards, this court consistently has concluded that submissions that require arbitrators to determine whether a party has violated a particular section of a collective bargaining agreement constituted unrestricted submissions. For example, in *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 581 n.1, the issue submitted for arbitration was "whether the Company violated article IV (n) or other relevant provisions of the collective bargaining

---

[7] The settlement agreement provides in relevant part: "1. . . . (c) The term 'Phase III Arbitration' shall mean a separate arbitration between [Hartford Steam Boiler] and [Industrial Risk] pursuant to ARTICLE 9 of the reinsurance agreement between Factory Insurance Association, [Industrial Risk's] predecessor in interest, and [Hartford Steam Boiler], executed by Factory Insurance Association on March 25, 1975, and by [Hartford Steam Boiler] on April 8, 1975. The sole purpose of this arbitration will be to determine whether any loss which [Industrial Risk] is required to pay as a result of the decision in the Phase I Arbitration is reinsured under the contract of reinsurance as identified by the Phase II Arbitration.

"2. . . . (c) Within 45 days after a final decision in the Phase II Arbitration, the Phase III Arbitration panel shall have its initial meeting. No individual who is a member of the Phase II Arbitration panel may be a member of the Phase III Arbitration panel. Both [Industrial Risk] and [Hartford Steam Boiler] may call witnesses during the Phase III Arbitration, and witnesses can be questioned by either side. The sole issue to be adjudicated in the Phase III Arbitration is whether any loss which [Industrial Risk] is required to pay as a result of the decision in the Phase I Arbitration is reinsured under the contract of reinsurance as identified by the Phase II Arbitration."

agreement by failing to distribute overtime equally among all toolmakers and, if so, what shall the remedy be?" The court concluded therein that "[s]ince neither the submission formulated by the arbitrator, nor the issues suggested by the parties, contained conditional language, the submission at issue is unrestrictive." Id., 584–85. In *Bridgeport* v. *Bridgeport Police Local 1159*, supra, 183 Conn. 103, the submission provided: " 'Is this matter arbitrable? If so, was the City required to terminate non-resident police department employees under the Collective Bargaining Agreement and applicable ordinances of the City of Bridgeport?" The court concluded that, "[a]lthough that submission directed the arbitrators to examine the ordinances and the collective bargaining agreement, that direction was not made a condition of the submission," and therefore the submission was unrestricted. Id., 107.

Like the submissions in *Bic Pen Corp.* and *Bridgeport*, the submission in the present case did not contain any conditional language. The submission here required the arbitration panel to determine what amount Hartford Steam Boiler was required to pay Industrial Risk under the terms of the reinsurance contract. The fact that the submission in the present case required the arbitration panel to examine both the settlement agreement and the contract of reinsurance to resolve the issue submitted did not render the submission a restricted one.

Industrial Risk also relies on the references in the settlement agreement to "the sole issue" to be determined and "the sole purpose" of the phase III arbitration to support its claim that the parties intended to form a restricted submission. That reliance is misplaced. A "submission is unrestricted unless otherwise agreed by the parties." *Bennett* v. *Meader*, supra, 208 Conn. 363. We are not persuaded that the mere inclusion of the word "sole" in the settlement agreement evidences the

parties' intent to form a restricted submission. Although the references to the "sole question" and the "sole issue" resemble "language restricting the breadth of issues"; *Garrity* v. *McCaskey*, supra, 223 Conn. 5; if we were to adopt Industrial Risk's argument that the parties' submission is restricted because it required the arbitration panel to address only one question, many otherwise unrestricted submissions to arbitration would be transformed into restricted ones. See *United States Fidelity & Guaranty Co.* v. *Hutchinson*, supra, 244 Conn. 521–22 (whether plaintiff "legally entitled to recover damages" pursuant to language of insurance policy created unrestricted submission); *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 581–85 ("whether the Company violated article IV [n] or other relevant provisions of the collective bargaining agreement by failing to distribute overtime equally among all toolmakers" constituted unrestricted submission). We conclude, therefore, that the trial court properly determined that the submission in the present case was unrestricted.

## II

Industrial Risk next claims that, even if the trial court properly determined that the submission was unrestricted, it nevertheless improperly confirmed the award because the arbitration panel exceeded the scope of its authority in violation of § 52-418.[8] We conclude that the arbitration panel did not exceed the scope of

---

[8] See footnote 5 of this opinion. In its brief, Industrial Risk divided its second claim into two separate claims. Industrial Risk briefed its claim that the award does not conform to the submission separately from its contention that the arbitration panel exceeded the scope of its authority by determining what portion of the Monsanto loss was a boiler and machinery loss and fixing that amount. Each claim, however, is simply a different aspect of the same argument, namely, that the trial court improperly confirmed the award because the arbitration panel exceeded the scope of its authority. We therefore will address these contentions as a single claim.

its authority, and, accordingly, affirm the judgment of the trial court.

"The well established general rule is that [w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. *American Universal Ins. Co.* v. *DelGreco*, [supra, 205 Conn. 185]. When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 415–16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. *Garrity* v. *McCaskey*, [supra, 223 Conn. 4–5]. Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings. . . . *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 119, 676 A.2d 825 (1996)." (Internal quotation marks omitted.) *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 43–44, 757 A.2d 501 (2000).

"When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits. *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, [168 Conn. 54, 62, 357 A.2d 466 (1975)]. An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the

submission and the award to determine whether the award conforms to the submission. *New Britain* v. *Connecticut State Board of Mediation & Arbitration*, 178 Conn. 557, 562, 424 A.2d 263 (1979); *Board of Education* v. *Bridgeport Education Assn.*, 173 Conn. 287, 291, 377 A.2d 323 (1977).

"A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. *Meyers* v. *Lakeridge Development Co.*, 173 Conn. 133, 135, 376 A.2d 1105 [1977]." (Internal quotation marks omitted.) *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 584. The party challenging the award bears the burden of producing evidence sufficient to demonstrate a violation of § 52-418. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, supra, 237 Conn. 119.

With these legal principles in mind, we examine whether the award conformed to the submission in the present case. The submission asked the arbitration panel to decide: "[W]hether any loss which [Industrial Risk] is required to pay as a result of the decision in the Phase I Arbitration is reinsured under the contract of reinsurance as identified by the Phase II Arbitration." See footnote 7 of this opinion. The award of the arbitration panel provided: "The loss that [Industrial Risk] was required to pay to Monsanto Company is reinsured to the extent of [$22 million] under the reinsurance

agreement between [Industrial Risk] and [Hartford Steam Boiler]."[9]

Industrial Risk claims that the arbitration panel exceeded the scope of its authority by determining what portion of the Monsanto loss was reinsured by Hartford Steam Boiler and fixing the amount owed by Hartford Steam Boiler. In its brief, Industrial Risk alters the plain language of the submission arguing that it limited the arbitration panel to determining "*whatever loss, if any,*" for which Industrial Risk was liable as the phase I arbitration panel determined, was reinsured by Hartford Steam Boiler, making it an " 'all or nothing' " question. (Emphasis added.) Industrial Risk contends, therefore, that the arbitration award did not conform to the submission because the arbitration panel determined that Hartford Steam Boiler was responsible for only a portion of the loss determined in the phase I arbitration. In making this argument, however, Industrial Risk misconstrues the language of the submission. The exact language of the submission identified the issue as "whether *any loss* which [Industrial Risk] is required to pay . . . is reinsured [by Hartford Steam Boiler] . . . ." (Emphasis added.) Industrial Risk's argument that the plain language of the submission required the arbitration panel to determine "whatever loss, if any," was reinsured by Hartford Steam Boiler is not consistent with the exact language of the submission, but instead alters it by adding the words "if any." We are bound to review the exact language of the submission.

As the party challenging the award in this case, Industrial Risk bears the burden of producing evidence suffi-

---

[9] The arbitration award provided in relevant part: "I. The loss that [Industrial Risk] was required to pay to Monsanto Company is reinsured to the extent of [$22 million] under the reinsurance agreement between [Industrial Risk] and [Hartford Steam Boiler].

"II. [Hartford Steam Boiler] is awarded the sum of [$35,740.44] as costs resulting from the continuance of the Phase III hearing."

cient to demonstrate that the award does not conform to the submission. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, supra, 237 Conn. 119. Industrial Risk has not satisfied its burden. The language of the submission required the arbitration panel to determine *"whether any loss"* Industrial Risk owed to Monsanto was reinsured by Hartford Steam Boiler. (Emphasis added.) Industrial Risk asserts that there is only one reasonable interpretation of this language, namely, that it required the arbitration panel to issue a yes or no answer deciding whether the *full amount* of the Monsanto loss was reinsured, not determining whether a portion of that loss was reinsured. We disagree.

The plain language of the submission does not clearly support Industrial Risk's interpretation of the terms of the submission. In interpreting statutes that contain the word "any," we have recognized that "any" can have a variety of meanings. See *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 428, 572 A.2d 951 (1990); *King* v. *Board of Education*, 203 Conn. 324, 334, 524 A.2d 1131 (1987). The word "any" can be used to denote "all," "every," "some" or "one." See *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 428. Because "any" can be interpreted as "some," the language of the submission does not support Industrial Risk's claim.

Industrial Risk further claims that the settlement agreement in its entirety evidences the parties' intent to be bound by the phase I arbitration. Specifically, Industrial Risk cites the use of the phrase "as a result of the decision in the Phase I Arbitration" in the settlement agreement to support its claim. See footnote 7 of this opinion. In response, Hartford Steam Boiler argues that reading the language of the submission in light of the entire settlement agreement, specifically, article nine, demonstrates that the arbitration panel had the author-

ity to examine all of the underlying facts and coverage issues surrounding Industrial Risk's adjustment of the Monsanto loss. We agree with Hartford Steam Boiler.

"Arbitration is a creature of contract . . . ." (Internal quotation marks omitted.) *United States Fidelity & Guaranty Co.* v. *Hutchinson*, supra, 244 Conn. 519. "When interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. See *Tremaine* v. *Tremaine*, 235 Conn. 45, 57, 663 A.2d 387 (1995); *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 175, 622 A.2d 545 (1993); *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 116, 584 A.2d 1172 (1991)." *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 843, 669 A.2d 1221 (1996).

The contract establishing the authority of the arbitration panel in the present case was the settlement agreement. The settlement agreement defined the phase III arbitration as follows: "The term 'Phase III Arbitration' shall mean a *separate arbitration* between [Hartford Steam Boiler] and [Industrial Risk] *pursuant to ARTICLE 9* of the reinsurance [contract] between Factory Insurance Association, [Industrial Risk's] predecessor in interest, and [Hartford Steam Boiler] . . . ." (Emphasis added.) See footnote 7 of this opinion. This portion of the settlement agreement contained two manifestations of the parties' intent for the phase III arbitration. First, it demonstrated that the phase III arbitration was to be a separate arbitration between Hartford Steam Boiler and Industrial Risk. Second, it evidenced that the phase III arbitration was to be conducted pursuant to article nine of the reinsurance contract. Both of these manifestations of intent are integral to our understanding of whether the arbitration award conformed to the submission.

The fact that the parties agreed that the phase III arbitration was to be a separate arbitration between Hartford Steam Boiler and Industrial Risk is significant because it evidenced that the parties understood that the phase III arbitration would not be controlled by the phase I arbitration, in which Hartford Steam Boiler did not participate. At the time that Hartford Steam Boiler and Industrial Risk had entered into this settlement agreement, Hartford Steam Boiler had filed two civil actions in which it had challenged Industrial Risk's decision to arbitrate its dispute with Monsanto regarding whether the loss was a boiler and machinery loss without Hartford Steam Boiler's participation. As part of the settlement agreement, Hartford Steam Boiler agreed to withdraw its civil actions in favor of the arbitration procedure set out in the settlement agreement. In the settlement agreement, Hartford Steam Boiler agreed not to participate in the phase I arbitration between Industrial Risk and Monsanto in exchange for the phase II and III arbitrations established in the settlement agreement. It is not reasonable to presume that Hartford Steam Boiler relinquished its right to participate in the phase I arbitration while also agreeing to be bound by that arbitration between Industrial Risk and Monsanto. In light of the events that gave rise to the settlement agreement between the parties, the use of the term "separate arbitration" in the settlement agreement evidences that the parties intended the phase III arbitration to be an independent arbitration that was not subject to the terms of the phase I arbitration between Industrial Risk and Monsanto.

The parties' incorporation of article nine of the reinsurance contract in the settlement agreement's definition of the phase III arbitration further demonstrates that the parties intended that the phase III arbitration be a means for settling the amount of reinsurance owed by Hartford Steam Boiler to Industrial Risk. In the defi-

nition of the phase III arbitration contained in the settlement agreement, the parties explicitly stated that the "Phase III Arbitration [will be] . . . pursuant to ARTICLE 9 of the reinsurance [contract] . . . ." Article nine of the reinsurance contract provides in relevant part: "If there is a lack of agreement with respect to the facts or the interpretation of applicable coverage, [Industrial Risk] shall proceed to adjust the loss with [Monsanto]. If [Hartford Steam Boiler] shall take exception to such loss adjustment, it shall be adjudicated by a Boiler and Machinery Sub-Committee of [Industrial Risk's] Standing Loss Committee." The terms of article nine provide Hartford Steam Boiler with the right to dispute the adjustment between Industrial Risk and Monsanto. As a result of the incorporation of article nine into the definition of the phase III arbitration, Hartford Steam Boiler reserved the right to dispute the loss adjustment between Industrial Risk and Monsanto. The incorporation of article nine into the definition of the phase III arbitration in the settlement agreement further demonstrates that the parties intended the phase III arbitration to be a means for Hartford Steam Boiler to dispute Industrial Risk's adjustment of the Monsanto loss, including the phase I arbitration.

An examination of the settlement agreement as a whole, specifically its definition of the phase III arbitration and its incorporation of article nine of the reinsurance contract, indicates that the submission asked the arbitration panel to determine the amount of the Monsanto loss for which Hartford Steam Boiler was responsible under its contract of reinsurance with Industrial Risk. In its award, the arbitration panel determined that "[t]he loss that [Industrial Risk] was required to pay to Monsanto Company is reinsured to the extent of [$22 million] under the reinsurance agreement between [Industrial Risk] and [Hartford Steam Boiler]." Consequently, the arbitration panel's award clearly con-

formed to the unrestricted submission. We conclude, therefore, that the trial court properly confirmed the award of the arbitration panel.

The judgment is affirmed.

In this opinion the other justices concurred.