[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an application to vacate an arbitration award issued by the State Board of Mediation and Arbitration. For the reasons set forth in this opinion, the application must be denied.
It is unnecessary to restate all of the facts found by the State Board of Mediation and Arbitration. They can be summarized as follows. The plaintiff, International Brotherhood of Police Officers Local 361 ("the Union") entered into a labor agreement with the defendant, Town of New Milford ("the Town") for the terms and conditions of police services between July 1, 1995 and June 30, 1997. The bargaining agreement between the parties contains a procedure for resolution of disputes through arbitration.
Gilmer Thibeault ("Thibeault") was hired as a patrolman with the New Milford Police Department on May 21, 1987. He has been a member of the Union throughout his employment. In February and March 1997 Thibeault became depressed and unable to function in his job. He was hospitalized and treated for depression and anger problems at the Charlotte Hungerford Hospital from approximately March 4, 1997 to May 8, 1997. During this time he was on paid sick leave. On May 6, 1997 the Town notified Thibeault that he was being relieved of his duties as a police officer and that they would continue him on paid medical leave until sometime in June 1997 when he would need to undergo a fitness-for-duty evaluation in order to return to active duty.
On June 10, 1997 Thibeault presented himself for work and gave the Town a work certificate from his doctor stating that he had been treated for depression and that he able to return to work. The Town set him home. The Town contacted Thibeault's attorney and told him that it was necessary for Thibeault to provide medical records stating his diagnosis and treatment to the Town's doctor and to make an appointment for an examination in accordance with the May 6, 1997 notification. Thibeault CT Page 15878 did not provide the records or submit to an examination.
On June 23, 1997 the Town placed Thibeault on an unpaid leave of absence. On June 28, 1997 the Union filed a grievance contesting the Town's decision on the ground that the Town did not have just cause to indefinitely suspend Thibeault without pay, in violation of the collective bargaining agreement. This grievance was denied at each step of the grievance procedure. On February 20, 2001 the Arbitration Panel of the State of Connecticut Board of Mediation and Arbitration ("the Panel") issued a written award denying the grievance on the ground that the Town had just cause to indefinitely suspend Thibeault. The Union filed this appeal of the award.
The Union alleges that the award violates Section 52-418 (4) of the Connecticut General Statutes in that the Arbitrators imperfectly executed their powers so that a mutual, final and definite award upon the subject matter submitted was not made. The Union gives five separate reasons for this allegation. Before discussing them, the law regarding judicial review will be restated. The following quotation from a recent supreme Court case sets forth the general rules regarding the scope of judicial review of arbitration awards:
"The well established general rule is that [w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. American UniversalIns. Co. v. DelGreco, [supra, 205 Conn. 185]. When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. Hartford v. Board of Mediation Arbitration, 211 Conn. 7,14, 557 A.2d 1236 (1989); New Haven v. AFSCME, Council 15, Local 530,208 Conn. 411, 415-16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution.Garrity v. McCaskey, [supra, 223 Conn. 4-5]. Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings. . . .Metropolitan District Commission v. AFSCME, Council 4, Local 184,237 Conn. 114, 119, 676 A.2d 825 (1996)." (Internal quotation marks omitted.) Groton v. United Steelworkers of America, 254 Conn. 35, 43-44,757 A.2d 501 (2000).
"When the parties have agreed to a procedure and have delineated the CT Page 15879 authority of the arbitrator, they must be bound by those limits.Waterbury Board of Education v. Waterbury Teachers Assn., [168 Conn. 54,62, 357 A.2d 466 (1975)]. An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission. New Britain v. Connecticut State Board of Mediation Arbitration, 178 Conn. 557, 562, 424 A.2d 263 (1979); Board of Educationv. Bridgeport Education Assn., 173 Conn. 287, 291, 377 A.2d 323 (1977).
"A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. Meyers v.Lakeridge Development Co., 173 Conn. 133, 135, 376 A.2d 1105 [1977]. BicPen Corp. v. Local No. 134, supra, 183 Conn. 584. The party challenging the award bears the burden of producing evidence sufficient to demonstrate a violation of § 52-418. See Metropolitan DistrictCommission v. AFSCME, Council 4, Local 184, supra, 237 Conn. 119." (Internal quotation marks omitted.) Industrial Risk Ins. v. HartfordSteam Boiler, 258 Conn. 101, 114-115 (2001).
The first two reasons given in support of the plaintiff's appeal will be discussed together. First, the Union alleges that the Arbitration Panel improperly framed the issue in this case by failing to address the termination of Thibeault's employment. Second, the Union alleges that the award fails to indicate the length of the suspension, its termination date and the status of Thibeault's employment. The Union argues that the award is defective because it is not final as to the matters submitted so that the rights and obligations of the parties may be definitively fixed. See, Local 63 Textile Workers Union v. Cheney Brothers,141 Conn. 606, 617 (1954).
These first two reasons must be rejected because the submission was unrestricted and the issue submitted by the Union was the same issue framed and answered by the Panel. The issue of whether Thibeault had been terminated was not raised in the submission. Nor were issues regarding the length of the suspension, its termination date and the status of Thibeault's employment. The award complies with the submission in all respects. The Panel would have exceeded the scope of the submission if it had addressed the issues suggested by the Union. Although the issue of CT Page 15880 whether Thibeault resigned or was terminated may still be unanswered, the award is "final as to the matters submitted." The cases cited by the Union do not call into question the finality of the award. Based upon the principle of deferential review restated in the quotation from IndustrialRisk Ins. v. Hartford Steam Boiler, supra, the award conforms to the submission and must be confirmed.
The last three reasons give by the Union for vacating the award are based upon alleged violations of explicit, well-defined and dominant public policy considerations. The Supreme Court has recently held that, when a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review. Schoonmaker v. Cummings Lockwood of Connecticut, P.C., 252 Conn. 416, 429, 747 A.2d 1017
(2000). "The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. Garrityv. McCaskey, supra, 223 Conn. 7. A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them.Stamford v. Stamford Police Assn., [14 Conn. App. 257, 259, Page 46540 A.2d 400 (1988)]; Board of Trustees v. Federation of TechnicalCollege Teachers, [179 Conn. 184, 195, 425 A.2d 1247 (1979)]. When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award.Board of Trustees v. Federation of Technical College Teachers, supra [195]. Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. [United PaperworkersInternational Union v. Misco, Inc., 484 U.S. 29, 43, 108 S.Ct. 364,98 L.Ed.2d 286 (1987)]; see W. R. Grace Co. v. Rubber Workers,461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). . . . New Havenv. AFSCME, Council 15, Local 530, supra, [208 Conn.] 417. The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. Id. Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the [arbitrator's] award clearly violates an established public CT Page 15881 policy mandate." (Internal quotation marks omitted.) Watertown PoliceUnion Local 541 v. Watertown, 210 Conn. 333, 339-40, 555 A.2d 406
(1989).
The court agrees with the Union that the third reason given in support of the appeal has a legitimate colorable basis and will accord de novo review. First, the Union argues that the award violates explicit, well defined and dominant public policy prohibiting discrimination based on physical disabilities embodied in Federal, State and common law of Connecticut. It is unquestioned that such a policy exists. However, the Court disagrees that the award violates that policy. The Union agrees that it never raised this issue with the Panel. However, it argues that it is the Panel itself, not the town, which has violated the policy by issuing an award which treats Thibeault's emotional disability differently from the way a physical disability would have been treated. The court has made a de novo review of the record and finds no support for the Union's claim. The Town sometimes required fitness-for-duty evaluations for officers returning from physical disabilities. There was nothing in the record to indicate that the Town discriminated against Thibeault in any way. The Town merely took reasonable precautions to ensure that their employee was fit for duty.
There is ample evidence that the Town had the right under the contract to order Thibeault to undergo a fitness-for-duty evaluation before allowing him to come back to work. Section 5.01 of the Management rights provision provides that the Town has the right to proscribe rules regarding the maintenance of discipline and efficiency of its employees. Pursuant to that section the Town has promulgated a manual containing the rules for the Police Department prepared by the New Milford Police Commission. Section 2.1.8 of those rules provides that "all sworn members of the department shall . . . submit to a physical exam and/or psychological exam at any time, at the expense of the Department, when so ordered by the Chief of Police." The evidence is substantial that Thibeault had experienced serious depression which required several weeks of hospitalization. He had experienced thoughts of suicide on two occasions in the past few months. The note from Thibeault's doctor certifying that he could return to work was short and unenlightening as to his diagnosis, treatment and prognosis. It was reasonable and in accordance with the bargaining agreement for the Town to request that Thibeault make the medical records of his treatment available to the Town doctor to under go a fitness-for-duty examination. This public policy argument based upon personal privacy was not raised by the Union at the hearing before the Panel or in it's briefs to the Panel. The Union's reply brief to the Panel does contain a statement that it was an abuse of discretion for the town to fail to "acknowledge and address" Thibeault's CT Page 15882 request to limit the request for medical records to those related to Thibeaults's treatment for depression. This claim is factually inaccurate because the town's request was limited to records of his recent illness when he was treated by Dr. Schecter and Charlotte Hungerford Hospital. It is unclear how Thibeault received the mistaken impression that the Town was requesting more than these limited records. However, Thibeault's willingness to produce the records and submit to the exam was never communicated to the Town. The records were never produced and the exam never took place. It appears from the briefs submitted to the Panel that Thibeault did not object to the limited request. In any event, the Union never made a public policy argument to the Panel that the request for records violated Thibeault's privacy rights.
Even if Thibeault had made this public policy argument to the Panel, there is no evidence that the Panel discriminated against Thibeault in its award based upon emotional disability. The public policy allegedly violated is that "prohibiting disclosure of medical records based upon overriding privacy concerns and the invasion of that privacy which is embodied in both the statutory law and common law of this state. The Union relies on Section 1-210 (b) of the Connecticut General Statutes which provides, in pertinent part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." The Freedom of Information Act relates to the disclosure of public records. This statute establishes a clear public policy in favor of the privacy rights of public employees regarding public disclosure of their medical files. If Thibeault had released his medical records to the Town, they would not be subject to public disclosure. But, the union has failed in its burden of proving that there is an explicit public policy that is well defined and dominant in favor of shielding from an employer medical records of treatment for a condition which has disabled the employee for several weeks. Contrary to the claims of Thibeault, the Panel found that the request for medical records was not sweeping in scope. It was limited to records of his recent illness that led to his disability. The Union has failed to demonstrate that this request would violate Thibeault's privacy rights under a defined and dominant policy. CT Page 15883
The fifth and final argument raised by the Union for vacating the award is that enforcement of the award would violate the explicit, well defined public policy referenced in both statutory and common law of this state." The Union's brief explains this argument to be a summary of the first two public policy arguments. For the reasons already stated, this final policy argument is rejected.
The application to vacate the arbitration award is denied.
 John W. Pickard Judge of the Superior Court
CT Page 15884