WATERBURY BOARD OF EDUCATION *v.* WATERBURY
TEACHERS ASSOCIATION

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 8, 1974— decision released March 4, 1975

*Kevin T. Nixon,* with whom, on the brief, were *Donald A. House* and *Neal B. Hanlon,* for the appellant (defendant).

*John F. Phelan,* for the appellee (plaintiff).

*Martin A. Gould* filed a brief as amicus curiae but did not argue.

MacDONALD, J. The defendant, Waterbury Teachers Association, hereinafter referred to as W.T.A., has appealed from a judgment of the Superior Court granting the motion of the plaintiff, Waterbury Board of Education, hereinafter the Board, to vacate an arbitrator's award. The finding, which is not subject to correction,[1] discloses the following: On December 29, 1969, the Board and W.T.A. entered into an agreement, negotiated pursuant to the provisions of General Statutes §§ 10-153a—10-153h, as amended through 1969, commonly known and hereinafter referred to as the

---

[1] The defendant has assigned as error the court's failure to find from its draft finding certain facts which it claims to be admitted or undisputed, the court's finding several facts without evidence, and further, its finding certain facts which the defendant contends are conclusions. The bulk of the defendant's attack upon the finding is ineffectively presented, as no appendix in support of the defendant's first two claims is included. *Pawlowski* v. *Planning & Zoning Commission,* 157 Conn. 598, 599, 253 A.2d 8; *Brown* v. *Connecticut*

Teacher Negotiation Act. The term of said agreement was for the period January 1, 1970, through December 31, 1972, and its relevant portions are either quoted or, where sufficiently clear, summarized in the footnote.[2]

Article XXIII of the agreement contained a grievance procedure pursuant to which Henry Capozzi, a Waterbury teacher, on October 18, 1971, filed a grievance claiming a violation of the Waterbury civil service rules and regulations and of the 1969 agreement with regard to the appointment, duties and salaries of the positions of Director of Adult Basic Education, hereinafter referred to as D.A.B.E., and Director of Manpower Development Training Act, hereinafter M.D.T.A. The remedy requested in the grievance was twofold: (a) the conducting of open competitive examinations for

*Light & Power Co.*, 145 Conn. 290, 293, 141 A.2d 634. The claim that certain legal conclusions were inappropriately included among the findings of fact was not briefed and therefore is treated as abandoned. *State* v. *Grayton*, 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; Maltbie, Conn. App. Proc. § 327. Two paragraphs of the defendant's draft finding, which the court did not expressly find in the language of the draft finding, are references to provisions of the collective bargaining agreement between the plaintiff and the defendant, which was an exhibit in the hearing on the motion to vacate and was made in toto part of the finding without having to be printed.

[2] The relevant portions of the 1969 agreement are either directly quoted or summarized as follows:

Article I, § 6. "This agreement shall not limit or contravene the authority of the Board as provided by the General Statutes of Connecticut and the Charter of the City of Waterbury, except that the Board shall be deemed to have exercised its authority for the duration of this Agreement in the manner specified in the specific provisions of this Agreement . . . . Accordingly, the provisions of this Agreement shall constitute Board policy for the duration of this Agreement or until changed by the mutual written consent of the parties hereto . . . . No provisions of this Agreement shall have any retroactive effect or be in any way effective or binding prior to the effective date of this Agreement. All power and authority

the two positions, in accordance with the provisions and procedures of the civil service rules and regulations; and (b) the negotiation of the duties and salaries for said positions to be conducted in accordance with the Teacher Negotiation Act. The grievance was submitted to arbitration and on July 19, 1972, the arbitrator conducted a hearing at which there were oral amendments by W.T.A. of the statement of grievance and by the Board of its answer to the grievance. The arbitrator precisely stated the amended W.T.A. position and the amended Board answer in the following language quoted from his "Analysis": "At the July 19th hearing the . . . [W.T.A.] amended the remedy requested to include the following: (1) Nullify the existing appointments to M.D.T.A. and D.A.B.E. (2) Negotiate job specifications and salaries under the

given the Board by State Statute and/or City Charter shall be fully reserved to the Board, except in those areas and to that extent as such are in conflict with a specific provision of this Agreement."

Article II, § 1, recognized the W.T.A. as the sole bargaining representative for purposes of professional negotiations.

Article VIII, § 1. "All openings for positions covered by the budget of the Waterbury Board of Education and listed in the administrative-supervisory salary schedule in Article IV hereof, and/or currently existing or newly created administrative or supervisory positions paying a salary differential and covered by the budget of the Waterbury Board of Education shall be adequately publicized by posting."

Article XX, § 12. "This Agreement constitutes the sole and complete agreement between the parties and may only be amended by written agreement, similarly executed by the parties hereto."

Article XX, §§ 4, 5, and Article XXVII detail a mechanism for a mutually agreed upon amendment to the agreement.

Article XXIII, § 11, of the said agreement states, in part, that the arbitrator "shall be bound by and must comply with all the terms of this Agreement. He shall have no power to add to, delete from or modify in any way any of the provisions of this Agreement. . . ."

Article XXIII, § 11, states further "that neither the arbitrator nor his award shall usurp the statutory authority of the Board of Education."

teachers negotiation act. (3) Schedule examinations under Civil Service and refill both positions. (4a) . . . [If] the positions are found to be temporary and not administrative, then no administrative experience credit should be given for serving in the positions in any Civil Service examinations for other positions in the system. (4b) Reexamine for those positions where administrative experience credit was given for serving as either Director, M.D.T.A. or D.A.B.E. The Board's answer to the grievance is dated December 7, 1971, . . . and as amended at the July 19th hearing it reads in relevant part as follows: 'The position entitled Director of Adult Basic Education is fully funded by the State and Federal governments and therefore not under Civil Service Rules and Regulations. The position, Director of M.D.T.A. is fully funded by the State and or Federal Government and therefore, does not come under the Civil Service Rules and Regulations.' "

On August 24, 1972, the arbitrator issued an award in the following language: "The Board of Education violated Article II, Section 1, of its current collective bargaining agreement when it declined to subject the positions of Director, M.D.T.A., and Director of Adult Basic Education, to Civil Service Rules and Regulations. For ninety days from the date of this award, the present incumbents in both positions shall continue to perform all their duties. During this ninety day period the Board is directed to advise the Director of Personnel of this award and seek an open, competitive examination under Civil Service Rules and Regulations for both positions. If there has been no determination as to who is the successful applicant for each position from Civil Service within ninety

days of this award, the Board is directed to declare both positions vacant on the ninety-first day following this award, until such determination is forthcoming from Civil Service."

Section 204 of the charter of the city of Waterbury provides, in part, that: "Any promotion from a teaching position to an administrative position shall be made under the provisions of this Charter amendment. For the purposes of this Charter amendment administrative positions shall include: Superintendent of Schools, Assistant Superintendent of Schools . . . . The positions listed herein are examples of intent and shall not be considered as all-inclusive. Any other position in the educational system which requires more than fifty percent of the incumbent's time to be devoted to administrative duties shall be included in the classified service. If a question arises relative to the amount of time devoted in an administrative position, the question shall be referred to a committee of three for a decision. The Board of Education and the Civil Service Commission shall each designate one of their members to serve on such committee and these two persons together with the Mayor shall comprise said committee. The decision of the committee shall be final."

Section 205 of the charter provides in part for both open competitive examinations and promotional examinations for vacancies in positions in the classified service. The positions of D.A.B.E. and M.D.T.A. are not specifically enumerated among the positions listed in § 204 of the charter. The Capozzi grievance never requested, as a remedy, that the charter-prescribed committee of three be called upon to determine whether the posi-

tions of D.A.B.E. and M.D.T.A. are "administrative positions" within the meaning of that phrase as defined in § 204 of the charter.

The collective bargaining agreement between the parties was silent with regard to the two contested positions. Further, the agreement contained no reference to "open competitive examinations" even for positions covered by the agreement. The positions of D.A.B.E. and M.D.T.A. are not "positions covered by the budget of the Waterbury Board of Education" as they are "federally and/or state funded."

The court granted the motion to vacate on the basis of having concluded (1) that the agreement is silent in regard to the specific positions of D.A.B.E. and M.D.T.A.; (2) that the positions of D.A.B.E. and M.D.T.A. are found not to be within the classified service of the city of Waterbury since these positions lack the permanency which is requisite in a classified position because they "are not funded by the city but are funded entirely by federal and/or state grants, and which grants do not extend beyond a one year period"; (3) that the agreement is silent as to any contractual obligation of the director of personnel to conduct open competitive examinations for these positions; (4) that the arbitrator in his award erred and exceeded his powers in holding that the positions of D.A.B.E. and M.D.T.A. were covered by the provisions of the agreement, and added to the terms and provisions of the agreement and thus exceeded his powers by ordering open competitive examinations for these positions; and (5) that the arbitrator's award contravened the public policy of the state of Connecticut.

The basic assignment of error raises the question as to whether the trial court improperly concluded that the arbitrator exceeded his powers and thus rendered an invalid award. W.T.A. argues, and we agree, that an award rendered in conformity with the submission so as to constitute "a mutual, final and definite award upon the subject matter submitted"; § 52-418; should be confirmed. *Costello Construction Corporation* v. *Teamsters Local 559,* 167 Conn. 315, 319, 355 A.2d 279; *Gary Excavating Co.* v. *North Haven,* 160 Conn. 411, 279 A.2d 543.

The court concluded that the arbitrator erred and exceeded his powers in making an award and in further directing conduct, that is, in directing the Board to advise the director of personnel to seek an open competitive examination under the civil service rules and regulations on the ground that such award and direction were beyond the submission. With this conclusion we disagree, for we find that the award clearly was within the framework of the submission. W.T.A. argues that the Board's failure to object to arbitration of the grievance, where, by the wording of the submission, an award in favor of W.T.A. would unmistakably violate that section of the agreement prohibiting the arbitrator from altering, amending or adding to the provisions of the agreement, constitutes a tacit agreement to be bound by the award despite its contravention of the contract and further operates as a waiver of any objections to arbitrability of the particular question. There is authority to support this waiver theory. 5 Am. Jur. 2d, Arbitration and Award, § 50. In dictum, in *Niles-Bement-Pond Co.* v. *Amalgamated Local 405,* 140 Conn. 32, 38, 97 A.2d 898, we said: "The arbitration clause further provides that no question relating to the functions reserved to the

company, which in the preamble are set forth as managerial, shall be submitted to arbitration. The trial court, however, found that no question of the arbitrability of the dispute was raised before the arbitrator, and that clause must be considered as having been waived, if applicable at all."

Arbitration is a contractual remedy designed to expedite, in an informal context, the resolution of disputes. This court has always respected the autonomy of the arbitration process and has been circumspect in its pronouncements with respect to that process. It is a remedy bargained for by the parties and one which they are free to negotiate with respect to the procedure to be employed. Where the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits. However, this court's respect for the autonomy of the arbitration process dictates that we recognize the waiver principle. The effect of this recognition is to place a burden upon the parties, in the situation where the question of arbitrability is not reserved to the arbitrator, to frame the submission carefully to avoid the problem that has arisen here, and, if necessary to protect their objections, to seek judicial reconciliation of the threshold questions prior to submitting to arbitration.

W.T.A. argues that the scope of judicial review is limited to the provisions of § 52-418 of the General Statutes. As we recently stated, "[t]he scope of judicial review of an arbitration award is limited by statute and by the contractual agreement between the parties." *Costello Construction Corporation* v. *Teamsters Local 559,* supra, 318. In that decision we reaffirmed the principle which protects the

integrity of arbitration awards, namely, that where the issue of arbitrability is committed to an arbitrator for determination, "the court is bound by the arbitrator's determination unless that determination clearly falls within the proscriptions of § 52-418 of the General Statutes, or procedurally violates the parties' agreement." Thus, the mere conformity of the submission to the award does not foreclose the court from reviewing whether that award is in violation of the parties' agreement. This is not to say that the parties may not waive procedural limits. Our holding in *Costello* is not to be read to allow parties to forego objections to arbitration, gambling upon a favorable result and, when losing, to raise the procedural defects in a motion to vacate. In *Costello* the threshold question of arbitrability was clearly committed to the arbitrator's determination by the terms of the contract; thus, no question of waiver could arise in such a situation, since this court has held in the past that "[w]hether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also." *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 274, 231 A.2d 531; *Kantrowitz* v. *Perlman,* 156 Conn. 224, 226, 227, 240 A.2d 891. Thus, where the question of arbitrability is committed to the arbitrator the court may, on a motion to vacate, entertain challenges to the award alleging disregard of the procedural limits in the parties' agreement with regard to arbitration as they apply to this issue. In any other instance, procedural irregularities will be deemed waived unless the party asserting them compels a prior judicial resolution of this issue.

The same principle must be applied to the claim that the submission and award contravene the char-

ter provisions, previously enumerated, with regard to classified service. Here again, the Board acquiesced in the submission to the arbitrator and clearly waived this objection.

Arbitration is a creature of contract. *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.*, 148 Conn. 192, 197, 169 A.2d 646. The continued autonomy of that process can be maintained only with a minimum of judicial intrusion. It is the responsibility of those employing arbitration to ensure that every right and limitation on the arbitration process for which they have contracted is preserved.

For the reasons stated in this opinion, we conclude that the court was in error in granting the motion to vacate the award of the arbitrator.

There is error, the judgment is set aside and the case is remanded with direction to render judgment confirming the award.

In this opinion HOUSE, C. J., SHAPIRO and LOISELLE, Js., concurred.

BOGDANSKI, J., concurs in the result.