[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON WYATT'S APPLICATION TO ENJOIN ARBITRATION AND MOTIVA'S MOTION TO STAY ACTION UNTIL COMPLETION OF ARBITRATION
The plaintiff, Wyatt Energy, Inc. ("Wyatt") has filed an action alleging that defendant Motiva Enterprises LLC ("Motiva"), the assignee of defendant Shell Oil Products Company LLC ("Shell"), breached a contract concerning use of a gasoline distributing facility owned by Wyatt and located in New Haven. This contract is titled "Terminalling Agreement." Wyatt claims that Motiva, Shell, and another party, Equiva Trading Company, also violated the Connecticut Antitrust Act, Conn. Gen. Stats. § 35-24 et seq., and the Connecticut Fair Trade Practices Act ("CUTPA"), Conn. Gen. Stats. § 42-110a et seq., by the same conduct that Wyatt claims constitutes a breach of the Terminalling Agreement.
Motiva alleges that Wyatt has a contractual duty under the Terminalling Agreement to arbitrate its claims. Motiva filed a demand for arbitration and is attempting to proceed with arbitration before an arbitrator affiliated with the CPR Institute for Dispute Resolution. Motiva's claim in that proceeding is that Wyatt breached the terminalling agreement by terminating it before the termination date in the agreement. Motiva asserts that Wyatt's civil suit should be stayed pursuant to Conn. Gen. Stat. § 52-409 pending the outcome of the arbitration. Wyatt has filed an application to enjoin the arbitration on the ground that the claims set forth in its complaint are not arbitrable and that the provisions that would govern an arbitration are void and unenforceable.
Because the issues in the motion and the application dovetail, the court resolves them both in this ruling.
Findings of fact
Most of the relevant facts are set forth in a stipulation, dated September 13, 2002, and executed by counsel for the parties or persons CT Page 12304 authorized to act on their behalf. Attorney Barbara Wolf, counsel for Wyatt, authorized Attorney Alexandra McHugh, counsel for Motiva, to sign her name to the stipulation. The court confirmed this authorization at the hearing on the motion for stay and application for injunction on September 13, 2002.
The parties have stipulated that on May 1, 1997, Wyatt and Shell entered into a ten-year terminalling agreement. By the terms of that agreement, Shell was to use Wyatt's gasoline distribution facility at the New Haven port. Shell assigned its interest in the agreement to Motiva, and Wyatt claims that Motiva breached that agreement and violated the Connecticut Antitrust Act and CUTPA by buying a competing distribution facility and using that facility and its facility in Bridgeport to monopolize gasoline distribution in the western New England market served by the ports at New Haven and Bridgeport. The counts of Wyatt's complaint are as follows:
Count 1. Negligent misrepresentation against Shell;
Count 2 Fraudulent misrepresentation against Shell;
Count 3 Breach of contract against Motiva;
 Count 4 Breach of implied covenant of good faith and fair dealing against Motiva;
 Count 5 Monopolization in violation of the Connecticut Antitrust Act against Motiva, Shell and Equiva;
 Count 6 Exclusion in violation of the Connecticut Antitrust Act against Motiva, Shell and Equiva;
Count 7 Violation of CUTPA against Motiva, Shell and Equiva;
Count 8 Claim for injunction of arbitration against Motiva;
The Terminalling Agreement was drafted by Shell, which supplied the text of the arbitration agreement in an attachment, incorporated into the contract at paragraph N, titled "Additional Terms and Conditions. Those terms include the following pertinent provisions:
 14. ARBITRATION. Any controversy or claim ("claim"), whether based on contract, tort, statute or other legal or equitable theory (including but not limited to any claim of fraud, misrepresentation CT Page 12305 or fradulent inducement or any question of validity or effect of this Agreement including this clause) arising out of or related to the Agreement (including any amendments or extensions), or the breach or termination thereof shall be settled by arbitration in accordance with the then current CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration of Business Disputes, and this provision. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1-16 to the exclusion of any provision of state law inconsistent therewith or which would produce a different result, and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction.
The arbitration shall be held in Houston, Texas.
There shall be one arbitrator.
 The arbitrator shall determine the claims of the Parties and render a final award in accordance with the substantive law of the State of Texas, excluding the conflicts provisions of such law. The arbitrator shall set forth the reasons for the award in writing.
 Any claim by either Party shall be time-barred if the asserting Party commences arbitration with respect to such claim later than two years after the cause of action accrues. All statutes of limitations and defenses based upon passage of time applicable to any claim of a defending Party (including any counterclaim or setoff) shall be tolled while the arbitration is pending.
* * * *
 If any part of this arbitration provision is held to be unenforceable, it shall be severed and shall not affect either the duty to arbitrate or any other part of this provision.
 20. MISCELLANEOUS. If any section or provision of the CT Page 12306 Agreement or any exhibit or rider hereto shall be determined to be invalid by applicable law, then for such period that the same is invalid, it shall be deemed to be deleted from the Agreement and the remaining portions of the Agreement shall remain in full force and effect.
* * * * *
 The Agreement shall be deemed to have been entered into in the State of Texas and the laws of the State of Texas shall be applicable in the construction of the terms and provisions hereof and in the determination of the rights and obligations of the parties hereunder.
Wyatt was represented by counsel at the time it entered into the agreement, and counsel reviewed the provisions set forth above. Wyatt believed that these terms were not subject to negotiation but that Shell regarded them as standard terms that must be included in the agreement.
On or about June 23, 2000, Wyatt sent Motiva a letter terminating the Terminalling Agreement (Stipulation, Ex.B).
On or about July 6, 2000, Motiva delivered to Wyatt a Demand for Arbitration alleging breach of the agreement. (Stipulation, Ex. C).
On or about August 9, 2000, Wyatt delivered to Motiva a Statement of Arbitration Defense and Counterclaim (Stipulation, Ex. D). In that document, Wyatt asserted the following claim:
 As a direct result of Motiva' s breaches of the Agreement, and because those breaches expose Wyatt to liability arising out of violations of the antitrust laws and other illegal conduct, Wyatt was forced to terminate the Agreement. Wyatt is entitled to a declaration that its termination was proper. Wyatt is further entitled to recover damages for Motiva' s breaches of the Agreement and the implied covenant of good faith and fair dealing and Motiva's misrepresentations.
The arbitration did not go forward immediately but was in an inactive status while Wyatt and Motiva each filed, at Superior Court in New Haven, applications for prejudgment attachments in a file in which no CT Page 12307 civil complaint was ever actually returned to court. When the matter was transferred to the complex litigation docket, this court dismissed that "case," docket No. X01 CV 02 0172022, which was not a case because the file contained no civil complaint. In July 2002, Wyatt commenced the civil action captioned above. The parties continue to seek prejudgment attachments, whether in aid of the civil action or in aid of arbitration.
In May 2002, Wyatt had sent Motiva a letter stating that it was withdrawing its Statement of Arbitration Defense and Counterclaim. (Stipulation, Ex. A). Motiva objected to the withdrawal (Stipulation, Ex. 1) and on May 31, 2002, sent Wyatt an Amended Demand for Arbitration. Motiva requested that the CPR Institute for Dispute Resolution proceed with the procedure for selecting arbitrator.
Wyatt filed suit in July 2002 seeking to enjoin the arbitration.
Wyatt continued to object to the arbitration but proceeded with a next step of submitting a ranked list of candidates to serve as arbitrator. As a result of the lists submitted by Motiva and Wyatt, CPR selected Attorney Frederic K. Conover as the arbitrator. Attorney Conover held a preliminary conference call with Motiva's and Wyatt's counsel on August 23, 2002. Wyatt participated in that teleconference but again objected to the arbitration on the ground that the dispute was not arbitrable and objected to paying the arbitrator's fee. (Stipulation, para. 12).
Injunctive relief
Where an opponent proceeds to arbitration of a dispute that is not arbitrable, the other party may seek injunctive relief against the pursuit of the arbitration. Policemen's and Firemen's Retirement Board v.Sullivan, 173 Conn. 1 (1977). Injunctive relief was treated as the proper procedure for raising a claim of nonarbitrability in Berlin v. Nobel Ins.Co., 60 Conn. App. 56 (2000), though in that case the relief sought was found to have been appropriately denied.
To be entitled to injunctive relief, a party must establish that it has suffered irreparable harm from a violation of a cognizable legal interest and that it has no adequate remedy at law. Avalonbay Communities, Inc.v. Orange, 256 Conn. 557, 566 (2001); Karls v. Alexandra Realty Corp.,179 Conn. 390, 401 (1980). The legal right that Wyatt seeks to protect is its right to have its disputes decided in the Superior Court rather than by an arbitrator, and Wyatt asserts that it will be irreparably deprived of this right if arbitration proceeds. The determination whether injunctive relief is warranted turns on the merits of Wyatt's contention CT Page 12308 that the issues raised in its complaint are not subject to a contractual duty to arbitrate
Who decides arbitrability?
The text of the arbitration provision, which has been set forth above, states that the arbitration of disputes is to be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. That Act, at 9 U.S.C. § 3, provides:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.
This provision clearly allocates the task of deciding whether a dispute is one that the parties have agreed to arbitrate to the court, not to the arbitrator. As the Connecticut Supreme Court has stated, the Federal Arbitration Act "creates a `body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [a]ct.'" (Emphasis in original.) Levine v. Advest, Inc.,244 Conn. 732, 747.
If the parties provide in the arbitration agreement that the arbitrating body, rather than the court, shall interpret the arbitration agreement to determine whether the issue in dispute is within the purview of the parties' undertaking to arbitrate, the court is to give effect to that agreement and refer the issue of arbitrablity to the arbitrating body. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943,115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); ATT Technologies, Inc. v.Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415,89 L.Ed.2d 648 (1986); Levine v. Advest, supra, 244 Conn. 749-50.
In cases in which an arbitration agreement is ambiguous as to whether the arbitrating body or the court is to determine whether the agreement provides for arbitration of the issue in dispute, the United States Supreme Court has ruled that the court, not the arbitrating body, makes that initial determination. First Options of Chicago v. Kaplan, supra,514 U.S. 944; Levine v. Advest, Inc., supra, 244 Conn. 750. CT Page 12309
The agreement of the parties in this case contains no provision that unambiguously allocates the issue of arbitrability to the arbitrating body. Applying the provisions of the Federal Arbitration Act as the terminalling agreement requires, therefore, this court concludes that the issue whether the claims asserted are to be decided by arbitration is a determination that this court must make.
Are the claims subject to arbitration?
Wyatt asserts that the arbitration must be enjoined because its statutory Connecticut claims are not subject to the contractual requirement to arbitrate. Motiva asserts that the civil case should be stayed because both contractual and statutory claims are subject to the contractual requirement to arbitrate.
In order to determine whether a dispute is one that the parties have agreed to arbitrate, the court must interpret the provisions of the contract that are concerned with the duty to arbitrate. Despite the fact that the contract provides that it is to be interpreted under Texas law, and despite the fact that the arbitration provision provides that "[t]he arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1-16 to the exclusion of any provision of state law inconsistent therewith or which would produce a different result," both Wyatt and Motiva have cited only Connecticut law on the issue of determining whether a particular dispute is one that the parties have agreed to arbitrate.
In cases involving disputes subject to the Federal Arbitration Act, the law of Texas is that the court must determine whether a claim falls within the scope of an arbitration agreement by looking at the terms of the agreement and the factual allegations of the claims. Prudential Sec.Inc. v. Marshall, 909 S.W.2d 896, 900 (Tex. 1995); Pennzoil Co. v. ArnoldOil Co., 30 S.W.3d 494, 498 (Tex.App. 2000).
"Generally, if the facts `touch matters,' have a `significant relationship' to, are `inextricably enmeshed' with, or are `factually intertwined' with the contract that is subject to the arbitration agreement, the claim will be arbitrable." Pennzoil Co. v. Arnold OilCo., supra, 30 S.W.3d 498, citing Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202,205-06 (Tex.App. 1997). Only if the facts alleged in the claims stand alone, are completely independent of the contract, and state a claim that could be maintained without reference to the contract is the claim not subject to arbitration. Pennzoil Co. v. Arnold Oil Co., supra, 30 S.W.3d 498. CT Page 12310
Texas courts apply the "positive assurance test," that is, the rule that claims are arbitrable unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. Id., citing Prudential Sec. Inc. v.Marshall, supra, 909 S.W.2d 899.
In Pennzoil, the Texas Appellate Court found that the contract at issue was subject to the Federal Arbitration Act and applied the positive assurance test. Even in cases in which the federal act is not a source of guidance, Texas courts hold that "[i]n Texas, courts favor arbitration agreements. See Jack B. Anglin Co. Inc. v. Tipps, 842 S.W.2d 266, 268
(Tex. 1992). Accordingly, any doubts regarding the scope of an arbitration agreement are resolved in favor of arbitation. See Nationwideof Fort Worth Inc. v. Wigington, 945 S.W.2d 883, 884 (Tex.App. Waco 1997), writ dism'd w.o.j.)." Koch v. Koch, 27 S.W.3d 93, 96
(Tex.App.-San Antonio 2000).
The arbitration clause in the Wyatt/Shell contract at issue broadly covers issues of contract formation and inducement to contract and "[a]ny controversy or claim . . . whether based on contact, tort, statute or other legal or equitable theory . . . arising out of or related to the agreement." The first four counts of the complaint, which assert breach of contract and torts concerning the formation of the contract, are clearly within the scope of the agreement to arbitrate.
The antitrust claims in counts five and six and the CUTPA count in count seven are statutory claims. These claims "arise out of" and "relate to" the contract in that Wyatt claims that Shell and its successor, Motiva, used the contract as a means of violating these statutes.
Wyatt's claims against Shell and Motiva must be submitted to arbitration unless Wyatt has presented a valid reason not to give effect to the agreement to arbitrate such disputes.
Unenforceability of the Contract
Wyatt further asserts that its claims of violation of Connecticut statutes cannot be held to be arbitrable because the contract itself is unenforceable to the extent that it contains provisions that may preclude Wyatt from asserting claims under Connecticut statutes. The Federal Arbitration Act provides at 9 U.S.C. § 2 that arbitration agreements are not enforceable in the presence of "such grounds as exist at law or in equity for the revocation of any contract." CT Page 12311
One of the provisions of paragraph 14 regarding arbitration requires the arbitrator to "determine the claims of the Parties and render a final award in accordance with the substantive law of the State of Texas, excluding conflicts provisions of such law." Wyatt interprets this provision as limiting its claims to claims that can be brought under Texas statutes and common law, and Motiva agrees that the effect of the provision would be to so limit Wyatt's claims.
Faced with a situation in which the operation of an arbitration clause would preclude a party's assertion of some statutory rights, the presumption of validity of an agreement to arbitrate disputes may be overcome by "a clear showing" that provisions are "`unreasonable' under the circumstances." Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1363
(2d Cir.), cert. denied, 510 U.S. 945 (1993), citing M/S Bremen v. ZapataOff-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).
As the Court of Appeals for the Second Circuit has observed, "[t]he Supreme Court has construed this exception narrowly: forum selection and choice of law clauses are `unreasonable' (1) if their incorporation into the agreement was the result of fraud or overreaching . . . (2) if the complaining party `will for all practical purposes be deprived of his day in court,' due to the grave inconvenience or unfairness of the selected forum . . . (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy . . . or (4) if the clauses contravene a strong public policy of the forum state." (Internal citations omitted.)Roby v. Corporation of Lloyd's, supra, 996 F.2d 1363, citing M/S Bremenv. Zapata Off-Shore Co., supra, 407 U.S. 10. By "forum state," the Supreme Court meant the forum of the suit concerning arbitrability. M/SBremen v. Zapata Off-Shore Co., supra, 407 U.S. 15. One way in which a forum state proclaims its strong public policy is to enact an anti-waiver clause as part of a substantive statute, as in the federal securities laws. Roby v. Corporation of Lloyd's, supra, 996 F.2d 1364. Another way is through judicial recognition of the public policy favoring the private enforcement of certain laws enacted to achieve important public policies. In Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,473 U.S. 614 (1985), the Supreme Court found that a Japanese arbitration panel could decide a claim of violation of the federal anti-trust act but that "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." Id. 637 n. 19.
Applying the Supreme Court's statement, the Second Circuit concluded inRoby that English law, the law specified in the arbitration/choice of law provision at issue, did provide adequate remedies to address the public CT Page 12312 policies served by the American statutes invoked by the plaintiffs in that case. In the case before this court, the opposite conclusion is warranted.
CUTPA provides for recovery for losses caused by unfair trade practices to consumers, competitors and others. It does not restrict its remedies to narrow categories of transactions but extends them broadly to "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 42-110b. The limitation to Texas law precludes assertion of a claim under CUTPA. The Texas Deceptive Trade Practices Act, Tex. Bus Comm Code Ann. § 17.45(6) (1994), allows a remedy only to consumers and defines that term in a manner that restricts the subject matter of a complaint to the purchase or lease of goods or services: "an individual, partnership, corporation . . . who seeks or acquires by purchase or lease, any goods or services, except the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." Texas Bus. Comm. Code Ann. § 17.45(4).
The operation of the arbitration/choice of laws clause at issue would preclude Wyatt from enforcing CUTPA and from vindicating the public policy of the State of Connecticut that those who engage in unfair or deceptive trade practices be deterred by being liable to those they injure, with no restriction to transactions involving the purchase or lease of goods or services.
By the terms of the contract provision at issue, Wyatt would likewise be unable to enforce the protections of the Connecticut Antitrust Act. The Texas analog, the Texas Free Enterprise and Antitrust Act, provides Wyatt with no remedy, as Texas' antitrust statute is limited to protection of businesses and consumers within the State of Texas: "[t]he purpose of this Act is to maintain and promote economic competition in trade and commerce occurring wholly or partly within the State of Texas and to provide the benefits of that competition to consumers in the State." Tex. Com. Bus. Code §§ 15.04, 15.25(b).
A court construing this provision of Texas law has granted summary judgment against plaintiffs who, like the plaintiff in the instant case, assert that conduct that took place outside of Texas violates the Texas antitrust act. Destec Energy, Inc. v. Southern California Gas Company,5 F. Sup.2d 433. 464 (S.D. Tex. 1993)
This court concludes that the choice-of-forum and choice-of-law clauses CT Page 12313 in the Shell/Motiva/Wyatt contract operate in this case in tandem to deprive Wyatt of Connecticut statutory remedies that were enacted to effectuate important public policies of the State of Connecticut. Where a court makes such a finding, it must then consider whether the entire arbitration clause is unenforceable or whether the parties must be regarded as having not agreed to arbitrate those statutory claims that would be impossible to assert at arbitration because of the choice-of-law provision. Where the arbitrable and non-arbitrable claims are distinct, the court may properly enforce the arbitration clause as to some claims and find that the parties did not intend that the statutory claims be arbitrated. In Re Managed Care Litigation, 132 F. Sup.2d 989, 1000-1001
(S.D. Fla. 2000), modified, 143 F. Sup.2d 1371 (S.D. Fla. 2001), affirmed, In re: Humana Managed Care Litigation, 285 F.3d 971 (11th Cir. 2002). In In Re Managed Care Litigation, supra, 132 F. Sup.2d 989, the court ruled that breach of contract claims were arbitrable but that RICO claims were not because the arbitration provision precluded the kinds of relief available under RICO and could not therefore be found to apply to RICO claims.
Where the arbitrable and nonarbitrable claims are intertwined, the correct remedy is to find that the arbitration provision as a whole is unenforceable. Graham Oil Co. v. ARCO Products Co., 43 F.3d 1244, 1247-49
(9th Cir. 1994), cert. denied, 516 U.S. 907 (1995). The decision of the court in Graham Oil Co. to find the arbitration provision unenforceable as to any issue was based on the court's finding that the entire provision constituted an integrated scheme to contravene public policy.Graham Oil Co. v. ARCO Products Co., supra, 43 F.2d 1249. In this case, the arbitration that Wyatt seeks to enjoin is the arbitration of Motiva's claim against Wyatt for wrongful termination of the contract, against which Wyatt to asserts defenses based on the Connecticut Antitrust Act. The issues now before the arbitrator are thus intertwined with the Connecticut statutory claims, and it is appropriate to enjoin the arbitration of these issues as well as to find that the issues raised in counts 5, 6, and 7 of Wyatt's complaint are not arbitrable because the arbitration provision is unenforceable to the extent that it bars those claims.
The first four counts of Wyatt's complaint, however, raise issues of inducement to contract and breach of contract that do not, on their face, raise public policy issues and for which Wyatt has advanced no convincing reason for lack of arbitrability. The court finds that the claims made in these counts are subject to the duty to arbitrate, and that Wyatt has not established entitlement to injunctive relief against arbitration of the claims made in these counts. CT Page 12314
The arbitration clause at issue specifically provides that "If any part of this arbitration provision is held to be unenforceable, it shall be severed and shall not affect the duty to arbitrate." This court's conclusion that those features of the agreement that would operate to bar Wyatt's CUTPA and Connecticut Antitrust Act claims are unenforceable but that other claims continue to be arbitrable gives effect to this provision.
Claim that contract is void because of illegal conduct
Wyatt also asserts that the arbitration clause "is void as a result of Motiva's illegal conduct." (Motion to Enjoin Arbitration, p. 4, para. 8.) In view of the determination stated above, it is not necessary to reach this additional ground. The claims made in the first four counts of Wyatt's complaint raise no claim that the contract is illegal but only that Wyatt was misled into entering into it and that Motiva breached it.
Waiver
Motiva asserts that Wyatt waived its objection to arbitration by filing with the CPR Institute for Dispute Resolution a response to Motiva's statement of the claims to be arbitrated. A party that asserts that an issue is not arbitrable must raise that claim in a timely manner. While a party may not complete an arbitration and raise a claim of nonarbitrability only after the issuance of the arbitrator's award, Whitev. Kampner, 229 Conn. 465, 476-77 (1994); Board of Education v. WaterburyTeachers Assn., 168 Conn. 54, 63 (1975); limited participation in the opening phase of an arbitration has been held not to constitute a waiver of a claim of nonarbitrability. In AFSCME, Council 15, Local 3153 v.Newtown, 49 Conn. App. 443, 449, 717 A.2d 759 (1998), the defendant town was found not to have waived the issue of arbitrability because it raised the issue before the arbitration hearing convened. No hearing has been commenced in this case.
Wyatt raised its claim of nonarbitrability as soon as Motiva demonstrated its intention to revivify its pursuit of arbitration in 2002, after having left the matter dormant for approximately two years after its 2000 demand for arbitration. Wyatt filed its suit seeking to enjoin the arbitration in July 2002, as soon as Motiva demonstrated an intention to go forward with the arbitration. The court does not find that Wyatt's very limited participation constituted a waiver.
Motion to stay arbitration
The Federal Arbitration Act, at § 3, provides that a court shall CT Page 12315 stay the trial of an action if the action raises issues that the court finds are "referable to arbitration." Federal courts have ruled that an objection to arbitrability must be made in a timely fashion, or it is waived. ConnTech Development Co. v. University of Connecticut Educ.Properties, Inc., 102 F.3d 677, 685 (2d Cir. 1996), but have suggested that an objection made at a sufficiently early stage and before the arbitration hearing occurs defeats a claim of waiver. Bergquist Co. v.Sunroc Corp., 777 F. Sup. 1236 (E.D.Pa. 1991).
Section 3 of Title 9 also states that the stay should extend "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
Where not all of the claims alleged in a civil action are arbitrable, a court may proceed with the nonarabitrable claims. Pierson v. Dean,Witter, Reynolds, Inc., 742 F.2d 334 (7th Cir. 1984); In re Managed CareLitigation, supra, 132 F. Sup.2d 989.
As has been explained above, this court finds that the present arbitration of the issues raised by Motiva in its Notice of Arbitration dated July 6, 2000, should be enjoined. The court finds that the issues raised in counts five, six and seven of Wyatt's complaint are not arbitrable for the reasons stated above, and that Wyatt's civil action therefore need not be stayed pending arbitration of those claims.
The claims made in the first four counts of Wyatt's complaint, however, are arbitrable, and Wyatt had not established any reason why it should not be held to a duty to arbitrate those claims.
Pursuant to 9 U.S.C. § 3, the court grants the motion to stay the civil action as to the first four counts until those counts have been arbitrated. The litigation of the nonarbitrable counts will proceed.
The parties are obviously free to agree to waive the arbitration clause as to the issues raised in the first four counts and to pursue all claims in this litigation. Alternatively, they are free to agree to speed or slow the arbitration to the extent consistent with the rules of the arbitration forum. In the absence of some such agreement, they will be in the position of simultaneously litigating the claims that are not arbitrable and arbitrating those that are.
Conclusion
For the foregoing reasons, the court grants Wyatt's application for CT Page 12316 injunctive relief and hereby orders that Motiva shall be and hereby is enjoined from proceeding with arbitration of the issues asserted in its Notice of Arbitration dated July 6, 2000. The court has found that the issues raised in the first four counts of Wyatt's complaint are arbitrable and grants the motion to stay litigation of the claims made in those counts only. The claims made in counts five, six and seven are not arbitrable, and the court denies the motion to stay litigation of those counts.
 Beverly J. Hodgson Date Judge of the Superior Court
CT Page 12317