******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BOARD OF EDUCATION OF THE CITY OF WATERBURY *v.* WATERBURY TEACHERS ASSOCIATION, CEA-NEA
## (AC 41981)

Lavine, Prescott and Sheldon, Js.

### *Syllabus*

The plaintiff board sought to vacate an arbitration award issued in connection with a grievance filed by the defendant union on behalf of a class of teachers, some of whom were assigned to the T school, alleging that the board had violated the parties' collective bargaining agreement by depriving certain teachers of their bargained for weekly preparation periods. Following arbitration proceedings, the arbitrator found that twenty-two teachers at the T school had been routinely deprived of preparation periods as a result of being required to substitute for absent teachers. In his award, the arbitrator ordered that the affected teachers be awarded compensatory damages and that the board cease and desist from depriving the teachers at the T school of their preparation periods. The trial court granted the board's application to vacate the award, denied the union's application to confirm the award and rendered judgment thereon, from which the union appealed to this court. *Held*:

1. The trial court improperly vacated the arbitration award, pursuant to the applicable statute (§ 52-418 (a) (4)), on the ground that the arbitrator exceeded or so imperfectly executed his powers that a mutual, final and definite award on the subject matter submitted was not made, as the award conformed to the arbitration submission: the unrestricted submission required a determination of whether teachers at the T school were deprived of their preparation periods and, if so, the nature and extent of their remedy, and the award determined that only twenty-two teachers at the T school had been deprived of their preparation periods, awarded the affected teachers compensatory damages and ordered the board to cease and desist from depriving the teachers at the T school of their preparation periods, and, therefore, the award plainly conformed to the submission because it was directly responsive to, and did not exceed the scope of, the submission; moreover, there was no merit to the board's argument that the award was not mutual, final and definite because the award did not offer any guidance that could be used in similar situations arising in the future, and the board's argument that the award failed to provide a basis for why the application of the cease and desist order applied only to the teachers at the T school and not to others misapprehended the award.

2. The trial court improperly determined that the arbitration award violated the public policy set forth in the Teacher Negotiation Act (§ 10-153a et seq.): the relevant public policy of the act, that parties must negotiate salaries and other conditions of employment through the collective bargaining process, was not contravened by the execution of the award because the act applies to arbitrations of collective bargaining agreements and does not apply to grievance arbitrations, the parties in fact abided by the act and negotiated various terms of employment in their agreement, including salary and compensation, the award did not constitute compensation, salary or remuneration because compensatory damages are not synonymous with compensation, the award did not add to or modify the provisions of the agreement, and, most important, the arbitrator awarded compensatory damages, which was within his authority as provided in the terms of the agreement; moreover, the award was not inconsistently limited to a group within a collective bargaining unit, as it was properly limited to the aggrieved teachers at the T school who had presented evidence of their deprivation at the arbitration proceedings.

Argued November 12, 2019—officially released March 17, 2020

### *Procedural History*

Application to vacate an arbitration award, brought to the Superior Court in the judicial district of Waterbury, where the defendant filed an application to confirm the award; thereafter, the matter was tried to the court, *M. Taylor, J.*; judgment granting the application to vacate and denying the application to confirm, from which the defendant appealed to this court. *Reversed*; *judgment directed.*

*Adrienne R. DeLucca*, with whom, on the brief, was *Martin A. Gould*, for the appellant (defendant).

*Tara L. Shaw*, with whom, on the brief, were *Connor P. McNamara* and *Anne Murdica*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendant, the Waterbury Teachers Association, CEA-NEA (union), appeals from the judgment of the trial court vacating an arbitration award in favor of the plaintiff, the Board of Education of the City of Waterbury (board). On appeal, the union claims that the trial court erred in concluding that (1) the arbitrator so imperfectly executed his powers that a mutual, final, and definite award on the subject matter submitted was not made, and (2) the arbitration award violates public policy. We agree with both of the union's claims and, accordingly, reverse the judgment of the trial court.

The following facts, as found by the arbitrator, are germane to this appeal. In January, 2017, the union filed a grievance on behalf of a class of teachers, some of whom were assigned to Tinker Elementary School (Tinker school), alleging that the board had violated the collective bargaining agreement between the union and the board (agreement) by depriving certain teachers of their bargained for weekly preparation periods. Specifically, the grievance stated: "Preparation [p]eriods. The [union] alleges that the [board] is in violation of the 2016–2019 [agreement] at Tinker [school] and other elementary schools as a result of multiple teachers failing to receive the [bargained for] preparation period." The union requested that the board cease and desist from such violations and that it pay all affected teachers who could quantify the loss at their per diem hourly rate. The board unanimously upheld the grievance and stated that the administration would make "every effort to provide [teachers with] the required five preparation periods per week." The board, however, denied the monetary award sought by the union.

The union then filed for arbitration, which was held before Attorney Emanuel N. Psarakis (arbitrator) in September, 2017. The parties were unable to agree on an arbitration submission and, therefore, allowed the arbitrator to fashion it. The board did not object to the submission as framed by the arbitrator. The submission stated: "Has the [board] violated the requirement that Waterbury [kindergarten through fifth grade] teachers at the Tinker school receive five weekly preparation periods, and that each preparation period must be no less than [thirty] minutes in duration with no less than three hours of preparation time per week? If so, what shall the remedy be?"[1]

Following the arbitration proceedings, the arbitrator found that twenty-two teachers at the Tinker school during the 2016–2017 school year were routinely deprived of one or more of their bargained for weekly preparation periods as a result of being required to substitute for other, absent teachers.[2] The arbitrator found, and the parties agreed, that the agreement had been violated by the board. The remaining issue for

the arbitrator to decide was "whether or not monetary damages [were] appropriate for the admitted deprivation of preparation time authorized for teachers under the [agreement]."

The board took the position that its initial offer, to make "every effort" thereafter to comply with the contract, was reasonable. The board further argued that the agreement does not authorize damages for such violations and that the agreement does not provide compensation for missed preparation periods.[3] Accordingly, the board argued that an award of compensatory damages would exceed the authority of the arbitrator because it would modify and add to the agreement. The arbitrator rejected the board's arguments and concluded that a compensatory award to the aggrieved teachers was appropriate because the agreement expressly authorized the awarding of compensatory damages by an arbitrator, the agreement did not expressly limit compensatory damages for the deprivation of preparation periods, and a monetary award would place the affected parties essentially in the same position in which they would be had there been no violation. The arbitrator further reasoned that "the remedy announced by the board to make 'every effort' to provide the required preparation periods is not a viable or reasonable one. It provides no consequences for ongoing violations, and allowed the board to continue violations with impunity." The arbitrator also noted that the board negotiated the provisions of the agreement, and, therefore, it was "not impossible to foresee that absences on account of authorized leave would impact upon the number of teachers available to teach on any day."

The arbitrator issued the following arbitration award (award): "Compensatory damages to each affected teacher as set forth [herein]; [a]n [o]rder that the [b]oard [c]ease and [d]esist from refusing to provide contract[ual] preparation periods to teachers at the Tinker [s]chool; [and] [f]ailing compliance with such [c]ease and [d]esist [o]rder, the [b]oard will become liable for and obligated to pay appropriate compensatory damages to affected teachers consistent with the formula discussed [herein]. It thereby will become responsible for compensatory damages to teachers for any preparation periods that continue to be denied [them] after the date of this decision."

After the award was issued, the union wrote to the arbitrator and requested the following clarification: "Does the [c]ease and [d]esist [o]rder requiring prospective compensatory liability for the denial of preparation periods during the remainder of the current [agreement] apply only to Tinker [school] teachers, all elementary school teachers in the bargaining unit or all teachers within the bargaining unit?" Over the board's objection, the arbitrator responded to the union's request for clari-

fication. He stated in part: "Consequently, to the extent that clarification may be necessary, any further monetary liability under this [award] for subsequent denial of preparation periods during the remainder of the current [agreement] *applies only to the affected teachers at the Tinker school for which compensatory damages were awarded.*" (Emphasis added.)

The union filed in the trial court an application to confirm the award pursuant to General Statutes § 52-417, and the board filed an application to vacate the award pursuant to General Statutes § 52-418. In support of its application, the board argued that, pursuant to § 52-418 (a) (4), the award must be vacated because the arbitrator exceeded his powers under the agreement and the award was not final and definite and was, therefore, unenforceable.[4] The board also argued that the award was contrary to law in that it disregarded the doctrines of impossibility and/or impracticality,[5] and that the award violated public policy.

The court granted the board's application to vacate the award and issued a memorandum of decision, in which it stated that the award "created an inconsistency in the application of the [agreement] to members of the union," despite an agreement provision to the contrary, because it "limit[ed] remuneration to Tinker's teachers" and that "parties are statutorily required to collectively bargain over the terms and conditions of employment, which includes salaries." The court decided that the "award was imperfectly executed, in that a mutual, final and definite award upon the subject matter submitted was not made, as it may be inconsistently applied to teachers in the district and, moreover, without following the mandatory provisions of the [Teacher Negotiation Act, General Statutes § 10-153a et seq.], applicable to the entire bargaining unit." The court concluded that the award violates public policy. Accordingly, the court granted the board's application to vacate the award and denied the union's application to confirm it. This appeal followed.

I

The union claims that the trial court improperly concluded that the arbitrator so imperfectly executed his powers that a mutual, final, and definite award on the subject matter submitted was not made. We agree with the union.

The standard that governs our review of arbitration awards that are challenged pursuant to § 52-418 (a) (4) is as follows. "The scope of judicial review of arbitration awards is very narrow. Our courts favor arbitration as a means of settling differences and uphold the finality of arbitration awards except where an award clearly falls within the proscriptions of § 52-418 . . . . Subsection (a) (4) of . . . § 52-418 . . . provides in part that an award is invalid if the arbitrators have exceeded

their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. Generally, any challenge to an award pursuant to . . . § 52-418 (a) (4) on the ground that the arbitrators exceeded or imperfectly performed their powers is properly limited to a comparison of the award with the submission. . . . If the award conforms to the submission, the arbitrators have not exceeded their powers." (Internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 228, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000). "In deciding whether the arbitrators have exceeded their powers, this court, as a general rule, examines only the award to determine whether it is in conformity with the submission. The memorandum of the arbitrator is irrelevant." *Board of Education* v. *AFSCME*, 195 Conn. 266, 271, 487 A.2d 553 (1985).

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . The party challenging the award bears the burden of producing evidence sufficient to demonstrate a violation of § 52-418." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 115, 779 A.2d 737 (2001). The trial court's determination of whether the award conforms to the submission is a legal conclusion and is, therefore, subject to our plenary review. See, e.g., *Tuxis-Ohr's, Inc.* v. *Gherlone*, 76 Conn. App. 34, 39, 818 A.2d 799, cert. denied, 264 Conn. 907, 826 A.2d 179 (2003).

The trial court concluded that a final and definite award was not made because it "may be inconsistently applied to the teachers in the district . . . ." The union argues on appeal that there is no support for the trial court's conclusion that a grievance award to an affected grievant is not mutual, final, and definite because it applies only to the particular employee who is affected. The board argues in response that the award will result in an inconsistent application to teachers in the district because the underlying grievance was expressly filed on behalf of a broader set of teachers than those assigned to the Tinker school;[6] the union requested clarification as to whether the award applied to other district schools, despite not having presented evidence of those schools; the award did not offer any guidance that could be used in similar situations arising in the future; and the award failed to provide a basis for why the application of the cease and desist order applied only to the Tinker school and not to others. We are not

persuaded by the board's arguments.

Our review of whether the arbitrator imperfectly executed his powers is limited to a determination of whether the award conforms to the submission.[7] As stated previously, the submission stated: "Has the [board] violated the requirement that Waterbury [kindergarten through fifth grade] *teachers at the Tinker school* receive five weekly preparation periods, and that each preparation period must be no less than [thirty] minutes in duration with no less than three hours of preparation time per week? If so, what shall the remedy be?" (Emphasis added.) The award stated: "Compensatory damages to each affected teacher as set forth [herein]; [a]n [o]rder that the [b]oard [c]ease and [d]esist from refusing to provide contract[ual] preparation periods to teachers at the Tinker [s]chool; [and] [f]ailing compliance with such [c]ease and [d]esist [o]rder, the [b]oard will become liable for and obligated to pay appropriate compensatory damages to affected teachers consistent with the formula discussed [herein]. It thereby will become responsible for compensatory damages to teachers for any preparation periods that continue to be denied after the date of this decision." The arbitrator clarified the award insofar as he stated that "any further monetary liability under this [award] for subsequent denial of preparation periods during the remainder of the current [agreement] *applies only to the affected teachers at the Tinker school for which compensatory damages were awarded.*" (Emphasis added.)

The parties agree that the submission was unrestricted.[8] The submission was whether *teachers at the Tinker school* were deprived of their preparation periods and, if so, the nature and extent of their remedy. The award determined that only twenty-two teachers at the Tinker school had proven that they had been deprived of their preparation periods and, as such, awarded compensatory damages to those teachers. Moreover, the award ordered the board to cease and desist from refusing to provide preparation periods to the affected teachers at the Tinker school who had been awarded the compensatory damages. The award plainly conforms to the submission because the award is directly responsive to, and does not exceed the scope of, the submission.

We reject the board's argument that the award was not mutual, final, and definite because the award did not offer any guidance that could be used in similar situations arising in the future. If the award had been so broad, it arguably would have exceeded the scope of the submission and would not have been mutual, final, and definite. Additionally, "an arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances." (Internal quotation marks

omitted.) *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 118, 728 A.2d 1063 (1999). It is, therefore, of little consequence that the award did not offer guidance to be used in similar cases arising in the future.

The board cited *Bridgeport City Supervisors' Assn.* v. *Bridgeport*, 109 Conn. App. 717, 952 A.2d 1248, cert. denied, 289 Conn. 937, 958 A.2d 1244 (2008), to illustrate a case in which an award was not definite and, therefore, properly vacated by the trial court. In that case, the court held that an arbitrator's award was not definite because it awarded the grievant alternative relief, insofar as she was to be reinstated *either* to one position *or* to another position, and, therefore, the award did not definitively fix the rights and obligations of the parties. Id., 728–29. The court decided that the award "le[ft] open the possibility of disagreement and litigation as to [the grievant's] ultimate placement." Id., 729. In the present case, the arbitrator did not grant alternative relief to the aggrieved teachers and, therefore, *Bridgeport City Supervisors' Assn.* does not change our conclusion.

Furthermore, we reject the board's argument that the award failed to provide a basis for why the application of the cease and desist order applied only to the teachers at the Tinker school and not to others. This argument misapprehends the award. The award applied only to the twenty-two affected teachers at the Tinker school, not all teachers at the Tinker school. Because the award applied only to those teachers who had proven that they had been deprived of their preparation periods, the basis was clear as to why the application of the cease and desist order applied only to those affected teachers.

On the basis of the foregoing, we conclude that the trial court improperly vacated the arbitration award on the basis that the arbitrator exceeded or imperfectly executed his powers pursuant to § 52-418 (a) (4).[9]

## II

The union also claims that the trial court erred in finding that the award violates the public policy of the Teacher Negotiation Act (act); see General Statutes § 10-153a et seq.; because the parties' agreement was modified without consideration of the statutory factors set forth in the act.[10] We agree with the union.

"A court's refusal to enforce an arbitrator's award . . . because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. . . . This rule is an exception to the general rule restricting judicial review of arbitral awards. . . . The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public

policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, *the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award.* . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's [award] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . .

"The party challenging the award bears the burden of proving that illegality or conflict with public policy is *clearly demonstrated.* . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, [a party] can prevail . . . only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate. . . . [W]hen a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review." (Citations omitted; emphasis in original; internal quotation marks omitted.) *DeRose* v. *Jason Robert's, Inc.*, 191 Conn. App. 781, 803–804, 216 A.3d 699, cert. denied, 333 Conn. 934, 218 A.3d 593 (2019).

In its memorandum of decision, the court first stated that provisions of the act represent a clear and dominant public policy of Connecticut and, further, that pursuant to *West Hartford Education Assn., Inc.* v. *DeCourcy*, 162 Conn. 566, 586–87, 295 A.2d 526 (1972), questions of conditions of employment, including compensation, are mandatory subjects of negotiation. The court determined that, in the present case, "arguably noncompensable terms and conditions of employment became compensable through grievance arbitration, brought by a subgroup of a bargaining unit, and were thereby inconsistently limited to one of many elementary schools in the district."

On appeal, the parties agree that the act sets forth public policy with respect to the negotiation of a collective bargaining agreement. The union argues, however, that the award does not violate the public policy set forth in the act because the act applies to arbitrations of collective bargaining agreements, not to grievance arbitrations. Furthermore, it argues that the parties bargained for the following terms within the agreement: that every teacher would be given five preparation peri-

ods per week and that an arbitrator of a grievance would have the authority to fashion a compensatory award.

In response, the board asserts that enforcing the award would violate the public policy set forth in the act insofar as salaries and working conditions must be negotiated pursuant to the procedures set forth in the act.[11] The board further argues that the award "purports to compensate a group of elementary school teachers for missing preparation periods where the [agreement] included specific language prohibiting such compensation, and the board had never compensated for missed preparation periods in the past." Finally, the board contends that the award lacks clarity and direction with respect to elementary teachers at other district schools who similarly miss preparation periods and, therefore, provide substitute services during those periods.

We conclude that the public policy of the act at issue in this appeal—that parties must negotiate salaries and other conditions of employment through the collective bargaining process—is not contravened by the execution of the award for the following reasons: (1) the act applies to arbitrations of collective bargaining agreements and does not apply to grievance arbitrations; see *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 714, 663 A.2d 349 (1995) (Arbitrations under the act arise out of "failure to reach agreement in ordinary collective bargaining . . . . The [act] establishes a sequence of increasingly formal collective bargaining procedures to ensure the existence of a teacher contract by the beginning of the town's fiscal year."); (2) the parties, in fact, abided by the act and negotiated various terms of employment in their agreement, including salary and compensation; (3) the award did not constitute compensation, salary, or remuneration because compensatory damages are not synonymous with compensation;[12] (4) the award did not add to or modify the provisions of the agreement; and, most importantly, (5) the arbitrator awarded compensatory damages, which was within his authority per the terms of the agreement.[13] That is, the award provided compensatory damages to those teachers who had been deprived of the benefit of preparation periods, which they had negotiated for through the collective bargaining process. On the basis of the foregoing, we also reject the claim that the award was inconsistently limited to a group within a collective bargaining unit; the award was properly limited to the aggrieved teachers at the Tinker school who presented evidence of their deprivation at the arbitration proceedings. In fact, it was the board that inconsistently provided teachers with their contractual right to preparation periods, which had been negotiated for through the collective bargaining process.

If we were to agree with the board and to conclude that the award violates the public policy of the act,

teachers would be unable to enforce their contractual right to preparation periods. Moreover, the authority for arbitrators to award compensatory damages pursuant to the agreement, in the face of empty gestures like the board's promise to "make every effort" to provide the bargained for preparation periods, would be rendered meaningless. Accordingly, we conclude that the board's challenge to the award does not raise a legitimate and colorable claim of a violation of public policy. The trial court, therefore, improperly vacated the award.

The judgment is reversed and the case is remanded with direction to render judgment denying the application to vacate the award and granting the application to confirm the award.

In this opinion the other judges concurred.

[1] We note that there was evidence before the arbitrator that there were approximately twenty-two [kindergarten through fifth grade] teachers at the Tinker school.

[2] The evidence presented by the union at the arbitration proceedings specifically related to those twenty-two teachers at the Tinker school.

[3] In support of this argument, the board asserted that the agreement language that "teachers may be required to perform substitute services . . . without remuneration or other remedy" in the event of teacher absences precluded compensating teachers for missed preparation periods. The arbitrator explicitly rejected this argument on the basis that the "provision relating to the performing of substitute services without compensation does not implicate the [agreement] requirement to provide five nonteaching preparation periods per week."

[4] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[5] With respect to the impossibility and/or impracticality argument, the arbitrator stated: "I conclude and find that the [b]oard has not proven it was legally impossible to comply with the contract[ual] requirements of preparation periods. The [agreement] is replete with teacher rights to sick leave, personal leave, religious leave, compensatory leave, family sick leaves, bereavement leave, child rearing and childbearing leave among others, and the [agreement] has provisions clearly providing authorized leave benefits to teachers with and without pay.

"However, I conclude the existence of the contractual requirements to provide various leave benefits cannot support a claim that it is impossible to provide them or provide authorized preparation time. The use of authorized leave under this [agreement] was reasonably foreseeable by the [b]oard, since it is party to and had negotiated the [agreement] provisions providing these benefits to teachers. It was not impossible to foresee that absences on account of authorized leave would impact upon the number of teachers available to teach on any day.

"I conclude that as the [agreement] provides for certain leave benefits which are then used as authorized, this circumstance does not rise to the level of creating an impossibility of complying with contract[ual] requirements providing teachers the requisite preparation time or their use of authorized leave benefits."

[6] The grievance stated: "The [union] alleges that the [board] is in violation of the 2016–2019 [agreement] at Tinker [school] *and other elementary schools* as a result of multiple teachers failing to receive the [bargained for] preparation period." (Emphasis added.)

[7] Because our inquiry is limited to the submission and the award, we do not consider the board's arguments with respect to the underlying grievance and the fact that the union requested clarification of the award.

[8] "A submission is unrestricted when . . . the parties' arbitration agreement contains no language restricting the breadth of issues, reserving explicit

rights, or conditioning the award on court review." (Internal quotation marks omitted.) *Bridgeport City Supervisors' Assn.* v. *Bridgeport*, 109 Conn. App. 717, 724 n.2, 952 A.2d 1248, cert. denied, 289 Conn. 937, 958 A.2d 1244 (2008).

[9] We also are unpersuaded by the trial court's reasoning that a final and definite award was not made because it did not follow the mandatory provisions of the Teacher Negotiation Act. Those considerations go beyond our limited scope of review of this claim. The scope of review for arbitration awards is exceedingly narrow because "[a]rbitration is a favored method to prevent litigation, promote tranquility and expedite the equitable settlement of disputes." (Internal quotation marks omitted.) *Benistar Employer Services Trust Co.* v. *Benincasa*, 189 Conn. App. 304, 309, 207 A.3d 67, cert. denied, 331 Conn. 932, 208 A.3d 280 (2019).

[10] "The [act] is essentially patterned on the National Labor Relations Act [29 U.S.C. § 151 et seq.]. . . ." *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 503, 522 A.2d 264 (1987); see generally *American Ship Building Co.* v. *National Labor Relations Board*, 380 U.S. 300, 317, 85 S. Ct. 955, 13 L. Ed. 2d 855 (1965) ("[t]he central purpose of [the National Labor Relations Act] was to protect employee self-organization and the process of collective bargaining from disruptive interferences by employers").

"By enacting the [act] the legislature gave teachers the right to bargain collectively and imposed upon school boards the duty to negotiate with the representatives of the teachers. In so doing the legislature expressed the view that by requiring that disputes between the parties be submitted 'to the mediating influence of negotiation it was eliminating any need for resort to illegal and disruptive tactics, and that disputes between school boards and teachers were 'more likely' of resolution and agreement by negotiation than by strike or otherwise." *Connecticut State Board of Labor Relations* v. *Board of Education*, 177 Conn. 68, 71–72, 411 A.2d 28 (1979).

The act provides in relevant part: "Members of the teaching profession shall have and shall be protected in the exercise of the right to form, join or assist, any organization for professional or economic improvement and *to negotiate in good faith through representatives of their own choosing with respect to salaries, hours and other conditions of employment* . . . ." (Emphasis added.) General Statutes § 10-153a (a).

[11] More specifically, the board argues that missed preparation periods are "a part of 'teacher [work]load' and compensation for such constitute 'salary' and, as such, must be negotiated under the [act]." Accordingly, the board argues that the award fails to analyze the board's ability to pay, consistent with the act, "which must be considered and applied when evaluating proposed contract changes in the context of a binding interest arbitration." The board, however, failed to argue that its ability to pay must be considered and applied when evaluating awards in grievance arbitrations.

[12] Compensation is defined as "[r]emuneration and other benefits received in return for services rendered; esp., salary or wages," and compensatory damages are defined as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered." Black's Law Dictionary (9th Ed. 2009) p. 354.

We also reject the board's assertion that the damages were intended as remuneration for substitute services rendered because the substitute services rendered were merely the cause of the teacher's deprivation of their preparation periods. The arbitrator also explicitly rejected this assertion on the basis of its factual findings. See footnote 3 of this opinion. "A court does not sit to review the factual findings of an arbitrator." *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 257, 117 A.3d 470 (2015).

[13] The agreement does not specify a remedy for a violation of this preparation periods provision. The agreement, instead, explicitly provides that an arbitrator "shall have the power to make an award, including appropriate compensatory awards."

---